Charles Edward SMITH, Appellant,

v.

STATE of Alaska, Appellee.

No. 701.

Supreme Court of Alaska.

Sept. 11, 1967.

---

Hugh G. Wade, of Atkinson, Wade, Conway & Young, Anchorage, for appellant.

Thomas E. Curran, Jr., Dist. Atty., and William H. Fuld, Asst. Dist. Atty., Anchorage, for appellee.

## OPINION

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

DIMOND, Justice.

Appellant was convicted of attempted burglary. On this appeal he contends that the cross-examination of two witnesses for the defense was improper and warrants a

reversal of the judgment of conviction and a new trial.

The attempted burglary took place at a florist shop. Across the street was a house designated as 730 D Street. A witness for the defense, Robert Thomas, testified on direct examination that he had rented the house as a recreational center and card room, and that he had an agreement with appellant and a man named Wagner whereby they provided some financial support for the card game operation. On cross-examination Thomas was asked whether the card game operation constituted a "little gambling". At that point defense counsel asked the court to instruct the witness as to his constitutional rights concerning the privilege against self-incrimination. The court then did so instruct the witness in the presence of the jury. Later on cross-examination, over the objections of appellant's counsel, the prosecuting attorney questioned Thomas concerning the kind of card games that were played at 730 D Street, whether or not the games were profitable, and whether Thomas had told a police officer that he planned to terminate the games and his partnership arrangement with appellant and Wagner.

Wagner also testified for the defense.[1] On direct examination he stated that he had rented the house jointly with Thomas and appellant and that it was used for playing cards and lounging. On cross-examination, over the objection of appellant's counsel, the prosecuting attorney questioned Wagner as to whether it was his intent to share in the profits from the card game operation and what type of profits were obtained. Wagner was then asked: "So actually, what was being operated there was a gambling house, is that right?" Wagner refused to answer that question, invoking his fifth amendment privilege against self-incrimination.

1. Wagner had been a codefendant and was jointly tried with appellant. At the close of the State's case in chief, a judgment of acquittal was granted as to him because of lack of evidence indicating that he was involved in the attempted burglary.

Appellant claims that the court erred in allowing Thomas and Wagner to be cross-examined as they were, because the questions asked by the prosecuting attorney were designed to elicit evidence of particular wrongful acts in violation of Civil Rule 43(g)(11)[b].[2] The state maintains that the cross-examination was permissible to impeach the testimony of those witnesses by showing their bias and interest in the outcome of the case.

To be admissible evidence must be relevant, and to be relevant it must tend to establish a material proposition.[3] The cross-examination of Thomas and Wagner tested and amplified their testimony on direct examination, that they and appellant were engaged together as partners in a business enterprise, viz., operating a recreation, and card game room. This was material, not because of the type of operation engaged in, but because these men were engaged in a business enterprise as partners. From this fact a jury, in judging the credibility of the witnesses, could believe that Thomas and Wagner would have friendly feelings for appellant, and because of such feelings would be inclined to slant their testimony in appellant's favor. The possible existence of such partiality, flowing from the business relationship of appellant and the two witnesses, may be shown by evidence in order to establish bias and thus impeach the witnesses' credibility.[4]

It is true that in so doing there was created an inference, if not proven, that the witnesses were violating the law by conducting a gambling game,[5] and that this may have tended to impeach the witnesses by "evidence of particular wrongful acts", in violation of the prohibition contained in Civil Rule 43(g)(11)[b].[6] The question thus arises as to whether evidence is admissible where on the one hand it serves a legitimate purpose and on the other hand tends to accomplish that which is forbidden. We believe that the answer depends upon an advised judgment as to which of the two objectives is the primary one sought to be accomplished. From reading the transcript of the cross-examination of Thomas and Wagner we reach the conclusion that the main purpose of the questioning was to show the possibility of bias. The cross-examination of those witnesses as to details of the business operation they were engaged in was not so

2. Crim.R. 26(a) states in part:
   The admissibility of evidence shall be governed by Civil Rule 43.
   Civ.R. 43(g) (11) [b] provides:
   A witness may be impeached by the party against whom he was called by contradictory evidence, or by evidence that his general reputation for truth is bad, or that his moral character is such as to render him unworthy of belief. He may not be impeached by evidence of particular wrongful acts, except that it may be shown by the examination of the witness or the record of a judgment that he has been convicted of a crime.
3. Mitchell v. Knight, 394 P.2d 892, 894 (Alaska 1964).
4. See State v. Lawson, 128 W.Va. 136, 36 S.E.2d 26, 27–28 (1945); McCormick, Evidence § 40, at 82–83 (1954); 3 Wigmore, Evidence § 949 (3d ed. 1940). See also Civ.R. 43(g) (7) which states: An adverse party may cross examine a witness as to any matter stated in the direct examination or connected therewith, and in so doing may interrogate the witness by leading questions.
5. AS 11.60.140 provides:
   A person who deals, plays, carries on, opens or causes to be opened, or who conducts, either as owner, proprietor or employee, whether for hire or not, a game of faro, monte, roulette, rouge-et-noir, lansquenet, rondo, vington, twenty-one, poker, draw poker, brag, bluff, thaw, craps, or a banking or other game played with cards, dice, or other device, whether played for money, or for checks, chips, credit representing money, or other representative of value, is guilty of a misdemeanor, and upon conviction is punishable by a fine of not more than $500, and by imprisonment in a jail until the fine and costs are paid. A person so convicted is punishable one day for every $2 of the fine and costs. The imprisonment shall not exceed one year.
6. Rule quoted note 2 supra.

**510**

extensive as to lead us to believe that the main objective of the questioning was to impeach by evidence of particular wrongful acts, that is, gambling. When the main objective to be served by cross-examination is legitimate and permissible as it is here, then the fact that particular wrongful acts are also suggested or established would be merely incidental and should not prevent the primary and legitimate objective of impeachment by showing bias from being accomplished.[7]

We find no error in admitting the evidence brought out in the cross-examination of Wagner and Thomas. The judgment is affirmed.

---

7. Bentley v. State, 397 P.2d 976, 978 (Alaska 1965).