**Horace Addison TILLERY, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 25266.**

United States Court of Appeals Fifth Circuit.

May 14, 1969.

SKELTON, Judge:

On July 24, 1966, Clardy's Department Store in Montgomery, Alabama, was burglarized, and over $12,000 in televisions, stereo record players, and other merchandise was stolen. Thereafter, Horace Tillery, who owned a business adjacent to the burglarized store, was indicted by a federal grand jury in Macon, Georgia. In Count One, Tillery was charged with violating 18 U.S.C. § 371 (1964), by entering into a conspiracy with Grady Tillery, Leo Weaver, and John Padgett to (a) transport stolen merchandise in interstate commerce from Alabama to Georgia, knowing that the merchandise was stolen, in violation of 18 U.S.C. § 2314 (1964); and (b) receive, store, and sell goods transported in interstate commerce, knowing them to have been stolen, in violation of 18 U.S.C. § 2315 (1964). To support its charge against the appellant, the grand jury cited eight overt acts committed in furtherance of the conspiracy:

1. The appellant, Horace Tillery, rented a truck from Avis rentals in Montgomery, Alabama, on July 24, 1966.

2. On July 24, 1966, appellant, John Padgett, and Grady Tillery (Horace Tillery's brother) burglarized Clardy's Appliance Store in Montgomery, Alabama, and stole approximately 50 television sets.

3. On July 25, 1966, Grady Tillery purchased gas for the truck at Clark's IGA store in Barwick, Georgia.

4. On July 25, 1966, Leo Weaver met with the appellant, John Padgett, and Grady Tillery at the Del Mar Motel, Valdosta, Georgia.

5. On July 25, 1966, the appellant, Leo Weaver, John Padgett, and Grady Tillery transferred the television sets to a cabin on the outskirts of Valdosta, Georgia.

6. On July 26, 1966, Leo Weaver concealed the television sets in the

Henry Clayton Custer, Albany, Ga., for appellant.

Walker P. Johnson, Tyrus R. Atkinson, Asst. U. S. Attys., Macon, Ga., for appellee.

Before COLEMAN and GOLDBERG, Circuit Judges, and SKELTON, Judge of the Court of Claims.*

* Sitting by designation as a member of this panel.

rear of the United States Post Office, Substation Number Two, in Valdosta, Georgia.

7. On August 3, 1966, Leo Weaver sold to Joel Edward Love approximately 24 television sets. The transaction took place near a small church on the outskirts of Clyattsville, Georgia.

8. On August 22, 1966, Leo Weaver sold to Derward Anderson approximately 12 televisions sets. This transaction occurred at a vacant farm house on the outskirts of Valdosta, Georgia.

In Count Two, appellant was charged with violating 18 U.S.C. § 2314 (1964), by transporting in interstate commerce goods known to have been stolen. In Count Three, the appellant was charged with violating 18 U.S.C. § 2315 (1964), by receiving, storing, and selling merchandise which had been transported in interstate commerce, knowing such merchandise to have been stolen. Horace Tillery was convicted on Counts One and Two and sentenced to two five-year terms, to run concurrently. We reverse the judgment below on the ground that the court committed plain error in failing to include in its charge to the jury a warning regarding the reliability of accomplice testimony.

Virtually all of the government's case against the appellant rested upon the incriminating testimony of John Padgett, an admitted co-conspirator and accomplice, who was not named as a defendant in the prosecution. Prior to his testimony at the trial, however, Padgett had given four different statements about the burglary of Clardy's Appliance Store and the transportation and disposition of the merchandise. The first statement was made to detectives from Montgomery, Alabama, pursuant to promises of immunity from the detectives and the owner of the burglarized store, Mr. Clardy. In this account, Padgett implicated himself, as well as the appellant, in the crime. His second statement was made to his attorney. However, in this account, Padgett dis-

avowed any knowledge of the crime and specifically indicated that he had no knowledge that appellant Horace Tillery had, " * * * anything to do with the burglary." In his third statement, Padgett, without the benefit of counsel, altered his story again and related to the FBI his knowledge of, and participation in, the crime. Finally, Padgett described the details of the crime to Clardy and Clardy's attorney. In this account, the planning and execution of the crime were explained. This last statement, which implicated appellant as a participant, was read to the jury by Padgett as evidence of Horace Tillery's guilt.

■ Padgett's tainted testimony at the trial was the only direct evidence which the government had against the appellant. The only other shred of evidence which could possibly corroborate Padgett's most recent version of the crime and connect the appellant with it was the showing that Horace Tillery's name was affixed to the rental agreement for the Avis truck allegedly used in hauling the stolen merchandise from Alabama to Georgia. This, of course, meant nothing without proof that Tillery's signature to the rental agreement was genuine. Since the government failed to establish the authenticity of this signature through the use of handwriting experts or otherwise, the rental agreement never attained enough probative force to corroborate Padgett's unreliable testimony in linking appellant with the crime. His testimony alone, therefore, comprised the only evidence tending to connect the appellant with the offense.

■■ Even though Padgett's earlier contradictory statements about the crime cast grave doubt upon his credibility, the trial court permitted the jury to decide the defendant's guilt without the benefit of an instruction that accomplice testimony should be received with caution and viewed with skepticism. Such an admonition was direly needed in this case. Accomplice testimony should always be scrutinized carefully by the jury because of its inherent untrustworthiness. This is especially true when the witness

has manifested his unreliability by making previous conflicting statements concerning his knowledge of the crime. When the accomplice testimony constitutes the only damning evidence against a defendant, the exigency for a cautionary instruction is even more compelling.

The failure to warn a jury about accomplice testimony is not necessarily reversible error in all cases. The verdict of a jury must be sustained, if there is substantial evidence, taking the view most favorable to the government, to support it. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). In determining whether there is substantial evidence in cases where a conviction rests upon the uncorroborated testimony of an accomplice, the general rule is that the uncorroborated testimony of an accomplice may support a conviction[1] if it is not incredible or otherwise unsubstantial on its face.[2] It is the better practice, however, to caution juries against too much reliance upon the testimony of an accomplice and to require corroborating testimony before giving credence to such evidence.[3] The warning is not an absolute necessity in all cases. However, as Judge Learned Hand indicated in United States v. Becker, 2 Cir. 1933, 62 F.2d 1007, the failure to give the warning in close cases, " * * * may turn the scale." Because the instant case is unquestionably a close one, the court is confronted with the question of whether the testimony of Padgett was so critical that the traditional caveat as to its evaluation and use was an indispensable part of the court's charge.

The failure of the trial court to give the cautionary warning as to accomplice testimony was not raised during the trial and has not been designated as error by the appellant. The appellee contends that, under Rule 30 of the Federal Rules of Criminal Procedure, we cannot now consider such failure as error because the defendant did not preserve

1. Caminetti v. United States, Diggs v. United States, and Hays v. United States, 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442 (1917); Holmgren v. United States, 217 U.S. 509, 524, 30 S.Ct. 588, 54 L.Ed. 861 (1910); Wooten v. United States, 5 Cir. 1967, 380 F.2d 230, *cert. denied*, 389 U.S. 942, 88 S.Ct. 302, 19 L.Ed.2d 294 (1967); Lockett v. United States, 5 Cir. 1967, 374 F.2d 883; Smith v. United States, 5 Cir. 1965, 343 F.2d 539, *cert. denied*, 382 U.S. 861, 86 S.Ct. 122, 15 L.Ed.2d 99 (1965); Peel v. United States, 5 Cir. 1963, 316 F.2d 907, 911, *cert. denied*, 375 U.S. 896, 84 S.Ct. 174, 11 L.Ed.2d 125 (1963); Joseph v. United States, 5 Cir. 1960, 286 F.2d 468, *cert. denied*, 372 U.S. 979, 83 S.Ct. 1114, 10 L.Ed.2d 144 (1963); Walker v. United States, 5 Cir. 1960, 285 F.2d 52; Lyles v. United States, 5 Cir. 1957, 249 F.2d 744, *cert. denied*, 356 U.S. 931, 78 S.Ct. 773, 2 L.Ed.2d 761 (1958); Siglar v. United States, 5 Cir. 1954, 208 F.2d 865, 867, *cert. denied*, 347 U.S. 991, 74 S.Ct. 854, 98 L.Ed. 1125 (1954); Burton v. United States, 5 Cir. 1949, 175 F.2d 960, 964, *cert. denied*, 338 U.S. 909, 70 S.Ct. 347, 94 L.Ed. 560 (1950); Pine v. United States, 5 Cir. 1943, 135 F.2d 353, 355, *cert. denied*, 320 U.S. 740, 64 S.Ct. 40, 86 L.Ed. 439 (1943); Osborne v. United States, 8 Cir. 1965, 351 F.2d 111, 118; Williams v. United States, 8 Cir. 1964, 328 F.2d 256, 259, cert. denied, 377 U.S. 969, 84 S.Ct. 1651, 12 L.Ed.2d 739 (1964); Haakinson v. United States, 8 Cir. 1956, 238 F.2d 775, 779; Nilva v. United State·, 8 Cir. 1954, 212 F.2d 115, cert. denied, 348 U.S. 825, 75 S.Ct. 40, 99 L.Ed. 650 (1954); Marcella v. United States, 9 Cir. 1960, 285 F.2d 322, cert. denied, 366 U.S. 911, 81 S.Ct. 1085, 6 L.Ed.2d 235 (1961); Lyda v. United States, 9 Cir. 1963, 321 F.2d 788, 794; Audett v. United States, 9 Cir. 1959, 265 F.2d 837, cert. denied, 361 U.S. 815, 80 S.Ct. 54, 4 L.Ed.2d 62 (1959); McQuaid v. United States, 1952, 91 U.S. App.D.C. 229, 198 F.2d 987, cert. denied, 344 U.S. 929, 73 S.Ct. 499, 97 L.Ed. 715 (1953); Pina v. United States, 9 Cir. 1948, 165 F.2d 890.

2. See Osborne v. United States, *supra*, Williams v. United States, *supra*, Haakinson v. United States, *supra*, and Lyda v. United States, *supra*, footnote 1.

3. See Holmgren v. United State·, *supra*, Caminetti v. United States, *supra*, Smith v. United States, *supra*; Joseph v. United States, *supra*, Walker v. United States, *supra*, Audett v. United States, *supra*, and McQuaid v. United States, *supra*, footnote 1.

this point by objecting to the omission of the warning before the jury retired, stating distinctly the matter to which he objected and the grounds for his objection. However, under Rule 52(b) of the Federal Rules of Criminal Procedure, this court can notice plain errors affecting substantial rights although they were not brought to the attention of the court.

In Williamson v. United States, 5 Cir. 1964, 332 F.2d 123, this court exercised its right to consider plain error and reversed a conviction because of the trial court's failure to admonish the jury to scrutinize narrowly the testimony of an accomplice. The *Williamson* case is strikingly similar to the case *sub judice*. In neither case did the defendant preserve the error by making a request for an appropriate charge regarding accomplice testimony. In both cases, the prosecution's hope for a conviction hinged solely upon the persuasiveness of accomplice testimony. In both, there was an indication that, because of previous conduct on the part of the witness, the testimony proffered was particularly suspect. In view of these similarities, we feel that *Williamson* controls the disposition of the instant case. This court has given prior recognition to the verity of Judge Hand's observation that, in close cases, whether the warning is given to the jury may turn the scale. See *Williamson, supra,* and *Pina* and *Lyles, supra,* footnote 1. Yet, in the instant case, each juror had to weigh the evidence as to Mr. Tillery's guilt or innocence and reach a difficult, delicate decision without the benefit of an instruction to monitor Padgett's testimony with caution.

Because federal courts allow a conviction on the uncorroborated testimony of an accomplice, if not incredible or unsubstantial on its face, such testimony often constitutes the decisive influence in a jury's decision. Consequently, the jury must ponder the veracity of an accomplice's damaging testimony cast in its proper light. By failing to warn the jury about Padgett's reliability in this case, the trial court presented the evidence to the jury in an improper perspective, and the jury may have felt bound to accept it as true. Padgett's crucial testimony was extremely unreliable, if not incredible and unsubstantial, in view of his earlier contradictory statements in which he indicated less concern with the truth than with his own skin. When these circumstances are coupled with the fact that Padgett's testimony comprised the sum total of the evidence against the defendant, the trial court's failure to warn the jury about accomplice testimony emerges as plain error, the remedy for which is to reverse and remand the case for a new trial. As the court indicated in *Williamson,* in less critical cases,[4] it might be within the trial court's discretion to omit an instruction on accomplice testimony, but in a crucial evidentiary situation, as here, where the evidence of the accomplice may be incredible or unsubstantial, the trial judge himself is under an obligation to appropriately apprise the jury of the potentially unreliable nature of the accomplice's testimony. In the instant case, the jurors were not properly advised on this score, and the failure of the court to so advise them has such significant consequences that we are compelled to hold that such failure was plain and reversible error.

Accordingly, the judgment of the District Court is reversed, and the case is remanded for a new trial.

Reversed and remanded.

4. See Pine v. United States, *supra*; Joseph v. United States, *supra*; Siglar v. United States, *supra*; Holmgren v. United States, *supra*, footnote 1; and United States v. Becker, *supra*.