John James **BAKKEN**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. 1236.

Supreme Court of Alaska.

Oct. 1, 1971.

Victor D. Carlson, Public Defender, Bruce A. Bookman, Asst. Public Defender, Anchorage, for appellant.

G. Kent Edwards, Atty. Gen., Juneau, W. H. Hawley, District Atty., Ketchikan, for appellee.

Before BONEY, C. J., DIMOND, RABINOWITZ, CONNOR, and ERWIN, JJ.

RABINOWITZ, Justice.

John James Bakken appeals from his conviction of the crime of statutory rape.[1]

Bakken was indicted for the statutory rape[2] of a 15-year-old girl named Bessie Wilson. At the trial, Stevee Stevens testified that she, Bessie Wilson, and Bakken were all at a party together; that Bessie and Bakken both left the living room; that Bessie was in the bedroom from 3 a. m. to 4 a. m., but she could not see the bedroom door and did not know if Bakken was in or had entered the same room as Bessie; that Bessie and Bakken had been "kiddin' around and messing around and that's about all."

Bessie Wilson testified that she and Bakken went into the bedroom and engaged in sexual intercourse. Bessie admitted that prior to trial she gave a statement to a

1. Appellant was sentenced to 3 years' imprisonment, suspended on condition that he be incarcerated 60 days and be on probation for the remainder of the 3 years.

2. AS 11.15.120(2) provides that one who "being 16 years of age, carnally knows and abuses a female person under 16 years of age, with her consent, is guilty of rape."

police officer in which she asserted that she had intercourse with Jack Johnstone, not with Bakken. Bessie also testified that on the night in question she was drunk to the point where she did not care about anything that happened to her, and that the next day she could not remember everything that had occurred during the party. According to Bessie, Bakken was also drunk during the party. Bessie admitted that five days prior to the time the offense allegedly occurred she had run away from her stepmother's home, and at the time of trial she was a ward of the court. At one point in her testimony, Bessie stated she was not sure whether she had had intercourse with anyone else during the party, but if she had, it had been with Jack Johnstone.

David Johansen testified that Bakken and Bessie had been kissing and petting ("making out") in the living room, and thereafter he did not see either of them for awhile. According to Johansen, the next time he saw Bakken in the living room, Bakken said something about how large Bessie was. Johansen stated that in an earlier statement, which he did not recall exactly, he had said that at the time he saw Bakken reappear in the living room Bakken had said, "Who has she been with? She sure is big. I was in it from the time I went in there until I came out." Johansen conceded that he assumed Bakken had been referring to Bessie, but Bakken had not pointed to anyone or used Bessie's name. Johansen also revealed that at the time of trial he was still on probation in regard to his conviction of the crime of contributing to the delinquency of Bessie Wilson, and had himself been drunk at the party.[3]

Appellant Bakken testified that he did not have sexual intercourse with Bessie Wilson, nor did he make any statement to Johansen concerning Bessie's size. According to Bakken's version of the party, Bessie was drunk; he never entered the bedroom with her nor did he kiss her; and that he was asleep on the couch in the living room from 3 a. m. to 4 a. m., during which period of time the alleged act of intercourse took place.

Paul Bergeron, a defense witness, stated that Bessie had been drunk and kissing everybody at the party.[4] Three further defense witnesses testified that Bakken's reputation for truth and veracity was good.

In this appeal, Bakken advances a three-pronged attack on his conviction. First, Bakken asserts the trial court committed prejudicial error by its refusal to allow his counsel to impeach the prosecutrix by asking her about her prior statements that he was not the father of her unborn child. Secondly, it is contended that the trial court erred in refusing to allow cross-examination of a key witness for the state as to his recent mental condition. Bakken's last assertion of error is that the trial court improperly denied his motion for judgment of acquittal.

Before trial began, the prosecutor advised the court that Bessie Wilson was pregnant, and stated that the prejudicial effect of this evidence would outweigh any limited relevancy for impeaching Bessie's credibility. Bakken's attorney countered stating that a physician thought the date of conception was on or about the date of the alleged offense. Since Bessie had told other persons that she was pregnant but not by Bakken, the latter's counsel argued that the fact of pregnancy and Bessie's statements were relevant to impeach any testimony she might give that she had had sexual intercourse with Bakken at the party. The theory was that if Bakken and she had had intercourse, she could not know that he was not the father, so her statement that he was not implied that she had not had intercourse with him. By way of rejoinder, the prosecutor said that Bessie

---

3. According to Johansen, Bessie Wilson was also drunk at the party. Dr. Phyllis Smith testified that she had examined Bessie's vagina and it was normal size for an adult woman, not especially large or small.

4. Bergeron also testified that Bakken was not drunk on the night in question.

would testify that her intercourse with Bakken had been *coitus interruptus,* so her belief that he was not the father was consistent with her testimony that they had intercourse on the date in question. The court ruled:

> THE COURT: Well, at this time I'll sustain the objection [i. e., the prosecutor's objection to any reference by Bakken's counsel as to Bessie's statements as to who was the father of her unborn child] * * *.

> MR. HAWLEY: Thank you.

> THE COURT: * * * because there's no necessity nor is it relevant to show previous unchaste character on the part of the Complainant. I don't quite follow what the defendant is getting at, and as I say I'll sustain the objection at this time even through the defendant's opening statement. It may be brought up again, say on cross examination or something like that where it may be relevant but at this stage of the proceedings it doesn't appear to the Court that it would be relevant as to who she said got her pregnant. It makes no difference unless later on it's shown that it's something that attacks the credibility, but I can't see it at this time. At this time I'll sustain the objection that you may bring it up later on if it becomes—seems to become pertinent then.

> MR. STUMP: Very well, Your Honor.

> THE COURT: But I'll sustain it at this time, including the opening statement if you make the opening statement now. If you waive it at this time until after the State puts on its case, why then we could take it up then. * * *

> MR. STUMP: Very well, Your Honor, I do intend to waive it.

> THE COURT: * * * if you deem it pertinent.

■ The state argues that the court's ruling precluded Bakken's counsel from discussing the statements in his opening statement only if he made that statement before the state presented its case. Since counsel for Bakken saved his opening statement until after the state presented its case, the ruling did not bind him, so if it was error, the error was harmless. We agree. In our view, the trial court barred the use of Bessie's prior statement only if counsel for Bakken's opening statement preceded presentation of the state's case. If there was error, then it was harmless under Criminal Rule 47(a), because counsel saved his opening statement until after the state presented its case.[5]

■ Bakken was convicted essentially on the testimony of Bessie Wilson that she had sexual intercourse with him, and David Johansen's testimony that Bakken remarked on the size of her vagina and said that he had been in it. Due to the questionable quality of Bessie Wilson's testimony, Johansen's evidence assumed a crucial role in the conviction of Bakken.

On cross-examination, Bakken's counsel asked Johansen, "Have you undergone psychiatric examination recently?" Counsel for the state objected. Thereafter, out of the jury's presence, Bakken's counsel made this offer of proof:

> He will testify that he was running around in the city of Point Arena * * naked; his commanding officer requested that he undergo * * * psychiatric examination at least and he did so for

---

5. It is clear that Bessie's prior statements that Bakken was not the father should be treated as inconsistent with her testimony that she had sexual intercourse with appellant at the party. McCormick says that

> if the previous statement is ambiguous and according to one meaning would be inconsistent with the testimony, it should be admitted for the jury's con-

sideration. * * * Moreover, it is to be hoped that instead of restricting the use of prior statements by a mechanical use of the test of inconsistency, the courts may lean toward receiving such statements in case of doubt, to aid in evaluating the testimony.

C. McCormick, Evidence § 34, at 64 (1954) (footnote omitted).

a period—I think one session was all that he had. I'm trying to relate this to intoxication because if I can prove that that time he was running around and he was intoxicated, I think [it] has a direct bearing on the way his testimony is going to run, as affects his credibility as to the night in question.

The trial court sustained the objection on the ground that

just one instance when he was either drunk or on something and went around the streets naked and then * * * psychiatric examination * * * [was] insufficient to attack his credibility in this case.

On the basis of Bakken's offer of proof, the state argues that the trial judge's ruling, excluding the question concerning Johansen's recent psychiatric examination, should be sustained because Johansen's running around naked in Point Arena, California, was a particular wrongful act, not admissible for impeachment under Civil Rule 43(g) (11) [b] which is made applicable to criminal cases under Criminal Rule 26 (a). The "particular wrongful acts" doctrine provides that a witness "may not be impeached by evidence of particular wrongful acts, except that it may be shown * * that he has been convicted of a crime."

■ We think that under our precedents and on the basis of Bakken's offer of proof, cross-examination of Johansen concerning

his psychiatric examination and the Point Arena incident was properly excluded. Here we cannot say that the reasons given by the trial court for the exclusion of the proffered evidence were clearly unreasonable or untenable.[6] Given a more informative offer of proof, the question concerning Johansen's recent psychiatric examination and the Point Arena incident would have been admissible. If the offer of proof had disclosed that Johansen suffered from some mental aberration rendering his observation and memory of Bakken's alleged admission unreliable due to a combination of psychiatric problems and intoxication, then such testimony would be admissible. For it is clearly open to the defense to show that because of some mental abnormality, Johansen's capacity for accurate perception and recollection were impaired.[7] Since the primary purpose of such evidence would be the legitimate one of impeachment by showing inability accurately to perceive and remember Bakken's purported admission, the incidental effect of showing a particular wrongful act, namely, Johansen's naked exhibition in Point Arena, would not render such evidence inadmissible.[8] In the case at bar, neither the fact of Johansen's psychiatric examination by itself nor in combination with the Point Arena incident constituted a sufficient offer of proof as to Johansen's testimonial unreliability. We therefore hold that the trial court properly sustained the prosecution's objection to the

6. In Lewis v. State, 469 P.2d 689, 695 (Alaska 1970), we held that one test of whether the trial court abused its discretion in ruling on the admissibility of evidence is whether the reasons given for the exercise of discretion are clearly untenable or unreasonable.

7. See American Law Institute, Model Code of Evidence § 106(1), and comment c(1) (1942); National Conference of Commissioners on Uniform State Laws and American Bar Association, Uniform Rules of Evidence, Rule 20 (1953); Ladd, Some Observations on Credibility: Impeachment of Witnesses, 52 Cornell L.W. 239 (1967); 2 J. Wigmore, Evidence §§ 227, 228 (1940); 3A J. Wigmore, Evidence §§ 931, 932 (Chadbourn rev. 1970).

8. In Smith v. State, 431 P.2d 507, 510 (Alaska 1967), we said:

When the main objective to be served by cross-examination is legitimate and permissible as it is here, then the fact that particular wrongful acts are also suggested or established would be merely incidental and should not prevent the primary and legitimate objective of impeachment by showing bias from being accomplished. (footnote omitted)

Smith has been followed in Gafford v. State, 440 P.2d 405, 408 (Alaska 1968); McCracken v. State, 439 P.2d 448, 450 (Alaska 1968); and Kugzruk v. State, 436 P.2d 962, 966–968 n. 24 (Alaska 1968). See also Watson v. State, 387 P.2d 289, 293 (Alaska 1963).

question asked of Johansen as to whether he had recently undergone psychiatric examination.[9]

■ One other facet of Johansen's testimony should be alluded to at this point. Criminal Rule 30 makes it mandatory that the court in its charge to the jury instruct that the oral admissions of a party are to be viewed with caution. This rule provides in part that

the court shall instruct the jury. * * *

* * * * * *

(2) That * * * the oral admissions of a party [ought to be viewed] with caution.

■ Given the closeness of the case and the importance of Johansen's testimony concerning Bakken's purported admission, we believe that the trial court's failure to give this mandatory cautionary instruction was so obviously prejudicial [10] that we choose to notice the point despite the absence of any objection on the part of Bakken's counsel.[11] On the basis of our study of the record, we hold that it was plain error [12] on the trial court's part not to have given the mandatory cautionary instruction, and further hold that the omission of this instruction cannot be characterized as harmless error.[13]

■ After resting his case, Bakken moved for judgment of acquittal on the grounds of insufficiency of evidence and the motion was denied. On appeal Bakken argues that his motion should have been granted because the prosecutrix's accusation that Bakken had intercourse with her should not have been believed without corroboration, and the corroboration provided was inadequate. The state argues that no corroboration was required, or even if it was, adequate corroboration is found in the record.

In determining a motion for judgment of acquittal, the trial judge should be guided by the following criteria:

If the evidence is such that reasonable jurymen must necessarily have * * * a [reasonable] doubt, the judge must require acquittal, because no other result is permissible within the fixed bounds of jury consideration. But if a reasonable mind might fairly have a reasonable doubt or might fairly not have one, the case is for the jury, and the decision is for the jurors to make. * * *

The true rule, therefore is that a trial judge, in passing upon a motion for * * [judgment of] acquittal, must determine whether upon the evidence, giving full play to the right of the jury to deter-

---

9. In a series of recent decisions, we have emphasized that great liberality should be given defense counsel in cross-examination of a prosecution witness with respect to his bias or motive for testifying. In re Doe v. State, 487 P.2d 47, 58 (Alaska 1971); RLR v. State, 487 P.2d 27, 44 (Alaska 1971); Whitton v. State, 479 P.2d 302, 316–318 (Alaska 1970). *Compare* Freeman v. State, 486 P.2d 967 (Alaska 1971).

10. In Bowker v. State, 373 P.2d 500, 505 (Alaska 1962), we adopted the "obviously prejudicial" criterion. *Bowker* was subsequently followed in Kugzruk v. State, 436 P.2d 962, 964 (Alaska 1968).

11. Crim.R. 30(a) provides in part that: No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objections.

It has been held that this requirement that objection be raised below does not prevent the application of the plain error rule where the court's charge has resulted in a miscarriage of justice. Tillery v. United States, 411 F.2d 644, 647–648 (5th Cir. 1969); Herzog v. United States, 235 F.2d 664, 666–667 (9th Cir. 1956), cert. denied, 352 U.S. 844, 77 S.Ct. 54, 1 L.Ed.2d 59 (1956). *See also* Daniels v. State, 388 P.2d 813 (Alaska 1964).

12. Crim.R. 47(b) provides that:
Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

13. Love v. State, 457 P.2d 622, 629–632 (Alaska 1969). Under the standard adopted in *Love*, we must be able to fairly say that the omission of the cautionary instruction did not appreciably affect the jury's verdict in order to find its absence harmless error.

mine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted. If he concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter.[14]

As indicated previously, we think the question is an extremely close one, yet we hold that the trial court did not err in refusing to grant Bakken's motion for judgment of acquittal. We characterize the question as close because of the following factors: The record reveals that Bessie Wilson was a 15-year-old runaway who ended up at a drunken party at a house in Ketchikan where beer, wine, and hard liquor were freely available to children. Bessie described herself as "the runaround girl at the house," defining this term in the following manner, "Well, mostly anybody's girl. * * * It means that if they wanted me they had me if I was drunk enough." As to the night in question, Bessie stated she had a lot to drink, that her memory of the events which occurred was impaired, and that in the bedroom where the alleged act of intercourse had taken place, it was so dark she could only make out shapes. Bessie also admitted that she had told the police that she did not have sexual intercourse with Bakken. By way of explanation, she stated that at the time she did not think the police needed to know.[15]

Also of significance is the fact that Bessie conceded that there was a possibility that it could have been somebody other than Bakken who had intercourse with her. In this regard, the record shows the following:

Q  And is there any possibility it could have been somebody else at the time and place we've been talking about?

A  There's a possibility but it wasn't.

*     *     *     *     *     *

A  Because if you guys prove that it was somebody else then it was somebody else, but the way I see it, you can't prove there was.

Q  Well, what if I could prove it was somebody else?

A  Well, then it was, but I—I * * *.

*     *     *     *     *     *

A  Right, but you can't prove it wasn't.

The other key witness for the state, David Johansen, testified that on the evening of the party he had been drinking but "wasn't staggering drunk." Johansen also revealed that at the time he was testifying he was on probation having been convicted of the crime of contributing to the delinquency of a minor, namely, Bessie Wilson. In regard to Bakken's purported admission as to the size of Bessie's vagina and to the fact that he had been in it, Johansen admitted that

the real meaning of the statement I think is rather hard to obtain because I don't think that the statement was directed to anyone in general. I think it was just a casual offhand remark.

14.  Judge Prettyman's opinion in Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229, 232–233 (1947), cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (footnotes omitted). *Compare* DeSacia v. State, 469 P.2d 369, 371 (Alaska 1970), where we said that on passing on the motion the judge must view the evidence and the inferences to be drawn therefrom in a light most favorable to the state. If the judge, after taking this view of the evidence,

determines that fair minded men in the exercise of reasonable judgment could differ on the question of whether guilt has been established beyond a reasonable doubt * * * he must submit the case to the jury. Bush v. State, 397 P.2d 616, 618 (Alaska 1964).

15.  Bessie further admitted saying that an officer of the Ketchikan police force "pounded things into her head."

\*   \*   \*   \*   \*   \*

He never pointed to anybody, but I would have to assume that he meant Bessie.[16]

Despite the foregoing, after studying the entire record and the inferences to be drawn therefrom in the light most favorable to the state, we have concluded that fair-minded men in the exercise of reasonable judgment could differ on the question of whether Bakken's guilt was established beyond a reasonable doubt.[17] We therefore conclude that the trial court properly denied Bakken's motion for judgment of acquittal.

█ Our holding on this issue necessarily embodies the further conclusion that no corroboration of the prosecutrix's accusation is required in statutory rape cases. In this appeal, Bakken has argued that his motion for judgment of acquittal should have been granted because Bessie Wilson's testimony that he had intercourse with her should not have been believed without corroboration, and that the corroboration provided was inadequate. The state argues that no corroboation was required, or even if *it was, adequate corroboration was provided.*

As the briefs of the parties show, there is good authority both for and against a requirement of corroboration of the prosecutrix's testimony in a statutory rape case, at least where her testimony is equivocal or incredible or she has been impeached. On the one hand, false accusations are common and difficult to disprove in these cases. On the other hand, corroboration may be impossible in a non-forcible rape situation.

We are in agreement with the state's position that if corroboration was required adequate corroboration is present in the record. On the other hand, we remain unpersuaded that we should adopt a rule which requires the prosecutrix's testimony

to be corroborated in all statutory rape cases, or in only those cases where the victim's testimony is equivocal, incredible, or has been impeached. We think the accused's interest in a fair trial was adequately safeguarded by the instruction which the court gave the jury on this issue. In this regard, the jury was instructed that:

It is not essential to a conviction that the testimony of the minor child who is [the] prosecuting witness be corroborated by other evidence, provided that from all the evidence you are convinced beyond a reasonable doubt of the defendant's guilt. However, a charge of statutory rape such as made against the defendant in this case, is one which generally speaking, is easily made, and, once made, difficult to disprove, even if the defendant is innocent. Therefore, I charge you that the law requires that you examine the testimony of the minor child with caution. \* \* \*

The judgment and commitment entered below is reversed and the matter remanded for a new trial.

ERWIN, Justice (dissenting).

I dissent from that portion of the majority opinion which holds the failure to give a cautionary instruction as to appellant's alleged out-of-court admissions plain error.

This court will ordinarily consider on criminal appeal only those issues which were properly presented below. An exception is made, however, for what are characterized as "plain errors" in order to lessen the harshness of an adversary system in which an accused is bound by the actions (or inactions) of his counsel where justice demands. However, the exception must not be allowed to become the rule. In a judicial system of limited resources,

16. We cannot read Dr. Smith's testimony as corroborative of Johansen's statement about Bakken's supposed admission. All that Dr. Smith stated was that Bessie's vagina was of normal size for an adult woman, which a girl of Bessie's age and experience doubtless was.

17. *See* note 14, *supra.* Martin v. City of Fairbanks, 456 P.2d 462, 464–465 (Alaska 1969). *Compare* Shafer v. State, 456 P.2d 466, 469 (Alaska 1969).

the necessary principle of finality is inconsistent with a demand for perfect trial (or even a demand that any errors be "harmless").[1] Furthermore, to notice on appeal every non-objected-to, potentially harmful error, whether the failure to object was due to strategy, ignorance or oversight, would place a premium on incompetence. The temptation to ignore error at trial in order to have a means of obtaining a new trial in case of an adverse judgment would be real.

In an attempt to strike a balance between the demands for justice of the accused and the public, courts have struggled to define the kind of error first noticed on appeal for which they will reverse. At least one commentator has questioned the usefulness of these attempts at definition:

> Courts have endeavored to put a gloss on the [plain error rule] by defining the kind of error for which they can reverse * * *. Thus it is said that 'plain error' means 'error both obvious and substantial,' or 'seriously prejudicial error,' or 'grave errors which seriously affect substantial rights of the accused.' Perhaps these attempts to define 'plain error' do not harm, but it is doubtful whether they are of much help. The sounder perception is that when an appellate court should take notice of an error not raised below must be made on the facts of the particular case, and there are no 'hard and fast classifications in either the application of the principle or the use of a descriptive title.' Indeed the cases give the distinct impression that 'plain error' is a concept appellate courts find impossible to define, save that they know it when they see it.

3 Wright, Federal Practice and Procedure § 856 at 372–73 (1969) (footnotes omitted).[2]

A fruitful field for plain error, and the one involved here, is the instructions. It is almost always possible to frame a more accurate instruction than the one actually given, or to assert that certain instructions neither requested nor given were essential to the jury's proper deliberation. The specific obstacle to this kind of postmortem is Criminal Rule 30(a) which provides in part that:

> No party may assign as error any portion of the charge or omission therefrom

---

1. This problem has assumed increased importance with the increasing complexity of the law of criminal procedure and the expanded and institutionalized guarantee of counsel. After a verdict of guilty has been returned, counsel, often newly-retained, comb the record at leisure for "error". It is hard to imagine that with a trial of any length such a search would be fruitless.

2. This court has utilized the "obviously prejudicial" standard [Bowker v. State, 373 P.2d 500, 505 (Alaska 1962); Kugzruk v. State, 436 P.2d 962, 964 (Alaska 1968)], the "manifest miscarriage of justice" standard [Rank v. State, 373 P.2d 734, 736 (Alaska 1962); Dimmick v. State, 449 P.2d 774, 776 (Alaska 1969); Shafer v. State, 456 P.2d 466, 467 (Alaska 1969)], the "obvious and substantial error" definition [Dimmick v. State, 449 P.2d 774, 776 (Alaska 1969)], and the "deprivation of a substantial right" test [Thomas v. State, 391 P.2d 18, 20 (Alaska 1964); Noffke v. State, 422 P.2d 102, 106 (Alaska 1967); Goresen v. State, 432 P.2d 326 (Alaska 1967)].

The language used by this court in Love v. State, 457 P.2d 622, 629 (Alaska 1969) lamenting the reliance upon mechanistic formulae in dealing with questions of "harmless error" applies with equal force in dealing with that doctrine's conterpart, "plain error":

> A formal statement of legal rules is of little value unless we know the methods by which those rules operate in practice. What matters pragmatically is only the portion of the formal rule that survives after the judicial apparatus has done its work.
>
> The application of the harmless error rule [or the plain error rule] in a given case is a broad act of judgment, with all that the term implies. It is not easy to express in mechanistic verbal formulae a rule comprehending the many factors which motivate that act of judgment. The interplay of impression and analysis, the experience and legal philosophy of the judge, the necessity to balance between competing interests, and a detailed consideration of the actualities in each case, all contribute inevitably to the result.

unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

The conflict between Criminal Rules 30(b) and 47(b) is obvious. On first impression the cases indicate little more than an ad hoc approach in the resolution of this conflict. However, a closer examination suggests a method of analysis based on the recognition that there are two kinds of charges: (1) those basic to every criminal trial, namely, the elements of the crime charged and the concepts involved in due process, such as burden of proof and the presumption of innocence; and (2) those concerning the evidence adduced and the procedures followed in the particular trial. The former instructions are fundamental, basic charges, the omission of which is plain error absent an intelligent waiver.[3] In the latter, however, we deal with trial counsel's conduct of the case, the elements or evidence he wishes to stress and those he wishes to subordinate; fundamental fairness is ordinarily not involved. Before an error as to this type of instruction can be found to be "plain", the court should be strongly convinced that prejudice clearly appears.

Because the cautionary instruction involved herein falls within the latter category, and because I perceive no clear indication of prejudice, I must reluctantly disagree with my colleagues as to the application of the plain error rule in this case.

Instruction 22 [4] cautioned the jury concerning problems of defense in statutory rape cases. Instruction 24 [5] noted that the appellant had presented evidence of good character. The jury was further instructed that they were to carefully weigh all testimony according to the demeanor, motive, intelligence and candor of the witnesses.[6] Finally, both the district attorney and de-

3. Drahosh v. State, 442 P.2d 44, 49 (Alaska 1968) (duplicity of charge) ; Noffke v. State, 422 P.2d 102, 106–107 (Alaska 1967) (supplemental instruction on elements of offense).

4. Instruction 22 reads as follows :
   It is not essential to a conviction that the testimony of the minor child who is prosecuting witness be corroborated by other evidence, provided that from all the evidence you are convinced beyond a reasonable doubt of the defendant's guilt. However, a charge of statutory rape such as made against the defendant in this case, is one which generally speaking, is easily made, and, once made, difficult to disprove, even if the defendant is innocent. Therefore, I charge you that the law requires that you examine the testimony of the minor child with caution.
   In giving this instruction, I do not mean to imply an opinion of my own as to the credibility of any witness.
   The fact that the charge here is one difficult to disprove should not deter you from rendering a verdict of guilty if you are convinced beyond a reasonable doubt that the defendant is guilty as charged.

5. Instruction 24 reads as follows :
   Defendant has introduced evidence of his good reputation in his community prior to the Indictment in this case.

Such evidence may indicate to the jury that it is impossible that a person of good character would commit the crime charged. Therefore, the jury should consider this evidence along with all the other evidence in this case in determining the guilt or the innocence of the defendant.
   The circumstances may be such that evidence of good character may alone create a reasonable doubt of defendant's guilt, although without it the other evidence would be convincing. However, evidence of good reputation should not constitute an excuse to acquit the defendant, if the jury, after weighing all the evidence, including the evidence of good character, is convinced beyond a reasonable doubt that defendant is guilty of the crime charged in the Indictment.

6. Instruction 14 reads as follows :
   You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves. A witness is presumed to speak the truth. But this presumption may be outweighed by the manner in which the witness testifies, by the character of the testimony given, or by contradictory evidence. You should carefully scrutinize the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to indicate whether the witness

fense counsel in closing argument stressed that the question of credibility of the various witnesses was the primary issue in the case,[7] and that the defendant should be acquitted if the jury did not believe Bessie Wilson.

I am simply unable to agree that in the context of the instructions and the closing argument in this case that the failure by the court to give the cautionary instruction constituted such prejudice to the appellant as to call for the intervention of this court without objection below.

is worthy of belief. Consider each witness's intelligence, motive, and state of mind, and demeanor and manner while on the stand, and his or her character as shown by the evidence. Consider also any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness is either supported or contradicted by other evidence.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause the jury to discredit such testimony. Two or more persons witnessing an incident or a transaction may see or hear it differently; and innocent misrecollection, like failure of recollec-

tion, is not an uncommon experience. In weighing the effect of a discrepancy, consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or wilful falsehood. If you find the presumption of truthfulness to be outweighed as to any witness, you will give the testimony of that witness such credibility, if any, as you may think it deserves.

7. Unlike the situation in Tillery v. United States, 411 F.2d 644, 647–648 (5th Cir. 1969), relied on by the majority, the instructions here made it clear that the jury was not bound to believe the testimony of the prosecution witnesses.