NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter.* *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| JAMES WILLIAM LEFFEL, | |
| Appellant, | Court of Appeals No. A-11916 |
| | Trial Court No. 3AN-12-2785 CR |
| v. | |
| | O P I N I O N |
| STATE OF ALASKA, | |
| Appellee. | No. 2564 — August 25, 2017 |

Appeal from the Superior Court, Third Judicial District, Anchorage, Jack Smith, Judge.

Appearances: Jason A. Gazewood, Gazewood & Weiner, PC, Anchorage, for the Appellant. Terisia K. Chleborad, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge SUDDOCK.

---

[*]   Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

James William Leffel was convicted of first-degree assault[1] for stabbing another man in the leg during a confrontation outside the Buckaroo Club, an Anchorage bar.

In this appeal, Leffel argues that the prosecutor improperly commented on Leffel's post-arrest silence. We agree that the prosecutor should not have characterized Leffel's claim of self-defense as "new information," thus implying that Leffel had not disclosed this information to the police. However, for the reasons we explain here, we conclude that this implied reference to Leffel's post-arrest silence was harmless beyond a reasonable doubt.

We also hold that the prosecutor should not have suggested that Leffel was able to "tailor" his testimony because he had reviewed the State's discovery materials, but we conclude that this error was harmless.

Lastly, Leffel challenges the trial judge's admission of testimony about the Hells Angels motorcycle club, of which Leffel was a member. The record supports the judge's ruling.

*Background facts and proceedings*

During an evening of drinking, Jens Schurig and three friends went to the Buckaroo Club in Anchorage. They left the bar around midnight to await a cab. As the men stood outside the bar, they commented upon a three-wheel Harley Davidson motorcycle parked by the bar's entrance.

The Buckaroo's bouncer, Anders Ekstrand, was also standing outside of the bar. When Ekstrand heard Schurig and his friends discussing the motorcycle, Ekstrand

---

[1]    AS 11.41.200(a)(1).

ordered them not to touch it, nor even to look at it, on pain of a beating. Schurig responded profanely and suggested that three-wheel motorcycles were less than manly.

Leffel — the motorcycle's owner and a member of the Alaska chapter of the Hells Angels motorcycle club — had by this point emerged from the bar to smoke a cigar. He was holding a pocket knife to cut the tip off of the cigar prior to lighting up. Leffel's friend, fellow Hells Angel Thomas Moore, joined him. Ekstrand recognized both men as Hells Angels and as frequent patrons of the Buckaroo Club.

When Leffel heard Schurig denigrate Leffel's motorcycle, Leffel approached Schurig and stabbed him in the upper thigh, opening Schurig's femoral vein. Bleeding profusely, Schurig soon lost consciousness. Leffel remained outside the bar, smoking, until the police arrived and took him into custody.

Leffel testified at trial, claiming self-defense. He testified that as he walked toward his motorcycle to retrieve a lighter for his cigar, Schurig threw a punch at him. Feeling outnumbered and vulnerable to attack by Schurig and his three friends, Leffel stabbed Schurig's leg.

Both Ekstrand (the bouncer) and Moore (Leffel's friend and fellow member of the Hells Angels) testified in support of Leffel.

The jury rejected Leffel's claim of self-defense and found him guilty of first-degree assault.

*Why we conclude that the prosecutor's comment on Leffel's post-arrest silence was harmless error*

After Leffel offered his exculpatory version of events at trial, the prosecutor asked him, "Now, what we're hearing today, we're hearing it for the first time, right?" The defense attorney immediately objected, and the attorneys approached the bench.

The prosecutor told the trial judge that he intended to elicit that Leffel at no time contacted the district attorney's office to explain his side of the story — a clear violation of Leffel's right not to talk to the authorities about the pending charge.[2] The trial judge forbade the prosecutor from asking his proposed question, but he authorized the prosecutor to establish that Leffel's claim of self-defense was "new information" that he was publicly revealing for the first time:

> *The Court*: I think [that the prosecutor] can ask to [what] extent that this is new information. ... I mean, it doesn't [implicate Leffel's] right to remain silent. [The prosecutor] can [ask whether] this is the first time we've heard this. Now certainly, [the prosecutor] can't go beyond that.

After receiving this ruling, the prosecutor asked Leffel: "This whole story that you've testified [to] here today is new information, correct?"

On appeal, Leffel argues that the prosecutor should not have been allowed to ask this question, because it was an improper comment on Leffel's right to post-arrest silence. We agree. In a similar case, *Adams v. State*, the prosecutor impeached a defendant through questions that alerted the jury that the defendant failed to offer an exculpatory account of events to the authorities after his arrest.[3] The Alaska Supreme Court held that such questions are normally constitutional error.[4] An exception applies when a defendant places their silence at issue by asserting at trial that the police denied

---

[2] *See, e.g.*, *Adams v. State*, 261 P.3d 758, 770 (Alaska 2011) (citing Alaska Const. art. 1, § 9; Alaska Evid. R. 403).

[3] 261 P.3d 758, 762-63 (Alaska 2011).

[4] *Id.* at 767, 774.

them an opportunity to tell their side of the story.[5]  A prosecutor may then comment on the defendant's earlier opportunity to, and voluntary decision not to, offer an exculpatory version of events.[6]

In Leffel's case, the State concedes that the prosecutor's question about "new information" would have been error if offered to prove Leffel's guilt.  But the State argues that Leffel opened the door to questions about his post-arrest silence by his response to a question inquiring why he did not retrieve his knife from the ground following the stabbing:

> *Leffel*:  Well, I glanced around for it, but by then the police were there, and they pretty well had every little red light in Anchorage on my chest, and you know, they're telling me to throw down the cigar, and you know, I could see things weren't going good.  So I resigned myself to the fact that they really didn't want to hear anything I had to say, and I needed to contact my attorney immediately.

Based on this testimony, the State contends (1) that Leffel volunteered that he chose to contact an attorney rather than speak to the police, and (2) that Leffel implied that the police *refused* to listen to him, thus opening the door to cross-examination on that point.

But nothing in Leffel's answer suggested that the police actively *denied* him an opportunity to recount his version of events.  Rather, Leffel stated that, given the circumstances, he decided that it was not an opportune time for him to justify himself to police, and that it would be better to consult an attorney.  Leffel's brief reference to his

---

[5]  *Id.* at 767-68 & n.46 (citing *United States v. Robinson*, 485 U.S. 25, 32 (1988) (permitting a prosecutor to comment on the defendant's choice not to testify when the defense argued during closing that the government had "breached its duty to be fair" by denying the defendant the opportunity to explain his actions)).

[6]  *Id.*

post-arrest silence did not justify the prosecutor's question suggesting that Leffel's self-defense claim might be false because it was first disclosed at trial.[7]

Because the prosecutor improperly commented on Leffel's post-arrest silence, Leffel's conviction must be reversed unless the State can show that the error was harmless beyond a reasonable doubt.[8]

*Adams* sets forth the relevant harmless error factors for this case: (1) whether Leffel's conviction depended primarily on the jury's assessment of the relative credibility of Leffel's testimony versus the testimony of other witnesses; (2) whether the prosecutor's questions directly elicited the testimony about Leffel's post-arrest silence; (3) whether the adverse comment on Leffel's post-arrest silence was "express" as opposed to "brief and passing;" and (4) whether the prosecutor accentuated the adverse comment by repeating it during closing argument.[9]

Here, the first factor weighs in Leffel's favor. In large part, this case turned on the relative credibility of Leffel and his two supporting witnesses versus Schurig and his companions. But the remaining factors weigh against a finding of prejudice. The prosecutor only briefly questioned Leffel about whether his claim of self-defense was "new information." And as we have explained, it was Leffel himself who first volunteered that he decided not to explain matters to the police, and to consult an attorney instead. Lastly, the prosecutor made no reference to Leffel's post-arrest silence or to "new information" during his closing argument.

---

[7] *See Adams*, 261 P.3d at 767-68 (holding that the defense attorney's tangential references to silence did not "open the door" to prosecutorial comment on silence).

[8] *Id.* at 773; *Chapman v. California*, 386 U.S. 18, 23 (1967).

[9] *See Moreno v. State*, 341 P.3d 1134, 1147 (Alaska 2015); *Adams*, 261 P.3d at 774-75.

We conclude that there is no reasonable possibility that the prosecutor's brief questions about "new information" affected the jury's verdict. Thus, the error was harmless beyond a reasonable doubt.[10]

> *Why we conclude that the prosecutor should not have been allowed to comment on Leffel's review of the pretrial discovery, but that the prosecutor's comment was harmless error*

On appeal, Leffel contends that the prosecutor improperly implied that Leffel deliberately conformed his testimony to the pretrial discovery. During the prosecutor's cross-examination of him, Leffel asserted that he was providing "pieces to the puzzle" so that the jury could understand what had happened outside the bar. Without objection, the prosecutor asked, "And you're putting the pieces together because you've read [the pretrial] discovery, correct?" The prosecutor then asked Leffel if he had reviewed the police reports in the case. Leffel confirmed that he had read the reports.

Although Leffel's attorney did not object at the time, Leffel now argues that the prosecutor's questions about Leffel's review of the pretrial discovery, in conjunction with the prosecutor's earlier comment that Leffel's claim of self-defense was "new information," was an improper comment on Leffel's post-arrest silence. Leffel reasons that the prosecutor could only assert that Leffel had tailored his testimony to the police reports because Leffel had remained silent following his arrest — and so had not committed himself to a particular defense until the time of trial. Thus, Leffel argues that the prosecution's implication of tailored testimony amounted to an indirect comment on Leffel's post-arrest silence.

The State analogizes this case to the United States Supreme Court case *Portuondo v. Agard*, where the court declared that a prosecutor could properly comment

---

[10] *See Adams*, 261 P.3d at 773.

on the fact that a defendant's continuous presence in the courtroom during trial afforded the defendant an opportunity to tailor their testimony to that of the preceding witnesses.[11] In *Adams v. State*, the Alaska Supreme Court cited *Portuondo* with approval.[12] However, our supreme court added the caveat that a prosecutor may not frame the "advantage of going second" argument in such a manner that it becomes a comment on the tactical advantages of pre- and post-arrest silence.[13]

Because Leffel did not object at trial, we review the prosecutor's question about Leffel's access to pretrial discovery for plain error.[14]

Although the prosecutor questioned Leffel about the advantage of being able to review the police reports and witness statements before he testified, the prosecutor did not return to this theme during closing argument. And the prosecutor's questioning on this point did not explicitly suggest that Leffel gained an advantage by remaining silent at the time of his arrest.

An astute legal analyst might interpret the prosecutor's questions as an implied comment on Leffel's pretrial silence. But we consider it highly unlikely that any of the jurors drew this inference.

We are nonetheless troubled by the fact that in virtually every case where a defendant testifies, the defendant will likely have read the pretrial discovery. A prosecutor could plant doubts about the veracity of a defendant's testimony merely by eliciting the fact that the defendant had earlier reviewed the pretrial discovery.

---

[11] *Portuondo v. Agard*, 529 U.S. 61, 73 (2000).

[12] *Adams*, 261 P.3d at 769 n.54.

[13] *Id.* at 769.

[14] *See id.* at 764.

It is true that our supreme court has authorized prosecutors to comment on the fact that a defendant enjoyed the advantage of hearing the State's witnesses prior to testifying.[15] But the jurors will themselves have heard the same testimony as the defendant. Thus, jurors will be able to evaluate the strength (or weakness) of the prosecutor's implication that the defendant's testimony may have been tailored to the testimony that came before.

The same cannot be said as to pretrial discovery materials furnished to the defense. Jurors have no way of knowing what information this discovery contained, and so can not independently evaluate an accusation that the defendant conformed their testimony to that material. For lack of a factual context, there will be little relevance to a prosecutor's generalized questions or comments regarding a defendant's review of the pretrial discovery.

We conclude that prosecutors should generally not comment (through cross-examination or during final argument) upon a testifying defendant's prior opportunity to review pretrial discovery material. If a defendant's prior knowledge of particular information in the discovery has case-specific relevance, the prosecutor should ask the trial judge for permission to pursue that inquiry.

*The trial court's denial of a pretrial motion to preclude mention of Leffel's membership in the Hells Angels was not error*

Leffel's attorney filed a motion in limine to preclude testimony about Leffel's membership in the Alaska chapter of the Hells Angels. The defense attorney argued that this evidence was more prejudicial than probative and thus should be excluded under Alaska Evidence Rule 403.

---

[15] *Id.*; *see also Gray v. State*, 463 P.2d 897, 907 (Alaska 1970).

In the State's opposition to this motion, the prosecutor surmised that the defense would call two witnesses: Thomas Moore (Leffel's friend and fellow member of the Hells Angels) and Anders Ekstrand (the bouncer at the Buckaroo Club who instigated the confrontation by ordering Schurig to leave Leffel's motorcycle alone). The prosecutor argued that these witnesses were biased in Leffel's favor because of their association with the Hells Angels. The prosecutor also argued that Leffel's membership in the Hells Angels was relevant to explain why he reacted violently to Schurig's comments denigrating Leffel's motorcycle.

The trial judge agreed with the prosecutor that evidence of Leffel's membership in the Hells Angels was relevant to Moore's potential bias. The judge also ruled that evidence of Leffel's membership in the Hells Angels was relevant to explain Leffel's reaction to Schurig's disrespectful comment about the motorcycle. The judge offered to give a limiting instruction so that the jurors would not misuse this information, but the defense did not request such an instruction.

During Leffel's testimony, he volunteered details about his membership in the motorcycle club. He claimed that his motorcycle was immune to theft due to the Hells Angels' intimidating reputation. He boasted that the Hells Angels do not tolerate disrespectful behavior. With little prompting, Leffel explained that the Hells Angels control the street where their clubhouse is located.

Thomas Moore testified as a defense witness. During cross-examination, the prosecutor asked Moore about the criteria for membership in the Hells Angels, about Moore's own participation in club activities, about his loyalty to the club, and about the value that Moore placed on his reputation.

During his closing statement, the prosecutor argued that Leffel's membership in the Hells Angels explained his reaction to Schurig's disrespect of Leffel's three-wheel motorcycle.

Leffel now contends that the prosecutor demagogically focused the jury's attention on the Hells Angels. But the record does not support this claim. Rather, it was Leffel who volunteered information about the nature and activities of the club and its importance to his identity. Leffel volunteered that club membership confers an aura of intimidating toughness that engenders deference from the public. Leffel's attachment to that aura of toughness potentially explained his assaultive reaction to Schurig's drunken taunt that the owner of a three-wheel motorcycle must be less than manly.

We review a judge's decision to admit or exclude evidence under Rule 403 for abuse of discretion.[16] We conclude that the trial judge did not abuse his discretion when he allowed the prosecutor to elicit testimony about the Hells Angels to show Moore's potential bias,[17] and to explain Leffel's assaultive reaction to Schurig's comment about the motorcycle.[18] We also conclude that any irrelevant or unfairly prejudicial testimony about the Hells Angels was volunteered by Leffel himself.

*Conclusion*

We AFFIRM the judgment of the superior court.

---

[16]  *See Howard v. State*, 239 P.3d 426, 429 (Alaska App. 2010).

[17]  *See Smith v. State*, 431 P.2d 507, 508-09 (Alaska 1967) (allowing cross-examination into business relationship between two defense witnesses and the defendant). *See also Evans v. State*, 550 P.2d 830, 836-37 & n.11 (Alaska 1976) (citing *Smith* and other cases as support for the point that trial courts should liberally permit cross-examination on witness bias).

[18]  *See, e.g.*, *United States v. LaFond*, 783 F.3d 1216, 1222 (11th Cir. 2015) (approving introduction of evidence of defendant's gang membership to show motive and bias); *United States v. Teran*, 496 F.App'x 287, 292-93 (4th Cir. 2012); *United States v. Gordon*, 496 F.App'x 579, 582-83 (6th Cir. 2012); *United States v. Montgomery*, 390 F.3d 1013, 1018 (7th Cir. 2004); *United States v. Sills*, 120 F.3d 917, 920 (8th Cir. 1997); *United States v. Santiago*, 46 F.3d 885, 889 (9th Cir. 1995).