Larry Roger KRISTICH, Appellant,

v.

STATE of Alaska, Appellee.

No. 2297.

Supreme Court of Alaska.

May 17, 1976.

Sandra K. Saville, Anchorage, for appellant.

Frederick H. Boness, Asst. Atty. Gen., and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before BOOCHEVER, C. J., and CONNOR, ERWIN, and BURKE, JJ., and DIMOND, J. Pro Tem.

DIMOND, Justice Pro Tem.

In the district court, the jury found Larry Kristich guilty of maintaining a gambling place in violation of AS 11.60.170.[1] On appeal to the superior court, the conviction was affirmed. On appeal to this court, Kristich seeks a reversal of his conviction on a number of grounds.

*The Oral Statement of Kristich.*

A police search of Larry Kristich's premises at approximately 7:00 a. m. on March 24, 1973, resulted in seizure of paraphernalia associated with gambling and the illegal distribution of liquor, and the arrest of 18 persons present, including Kristich, for gambling violations.

In the course of the trial, on redirect examination by the prosecuting attorney, police Officer Jansen testified as follows:

Q Did Mr. Kristich indicate to you any alternative source of money that he owned that wasn't on his person at that time?

A Yes, he did.

Q Where was that?

A He told me it was in an apartment across the street.

Q How did he characterize that—that money? Did he give it a name?

A He called it the—the roll.

Q The roll. What is the function of a roll as you understood it?

A I called it a roll and he said it was across the street.

Q What did you mean by the term, the roll?

A I—the house money.

Q Fine. Thank you.

Kristich contends that Jansen's statement that Kristich had acknowledged the existence of the "roll", or the house money, to pay off successful gamblers, was inadmissible because it was incriminating and was taken in violation of the requirements of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[1]. AS 11.60.170 provides:
A place where gaming or gambling is carried on, or where a banking or other game is played with cards, dice, or other device, whether played for money, or for checks, chips, credit, representing money, or other representative of value, or where unlicensed manufacture or sale or drinking of intoxicating liquor is allowed, or where persons are permitted to resort for the purpose of gaming or gambling, and all implements or property used and kept in maintaining these places are declared to be common nuisances. A person who maintains, aids or abets, or is associated in maintaining such a place is guilty of a misdemeanor, and upon conviction is punishable by a fine of not less than $100 nor more than $500, or by imprisonment in a jail for not less than 30 days nor more than six months, or by both.

He argues that when he made the incriminating statement it was in the course of custodial police interrogation,[2] and that Officer Jansen or some other police officer had not warned him, prior to questioning, that he had the right to remain silent, that any statement he made could be used against him and that he had the right to the presence of an attorney, either retained or appointed.[3]

As to the nature of the statement, Kristich contends it was incriminating. His position is that in order to be guilty of maintaining a gambling place, it had to be established by the state that the persons on his premises, who presumably were engaged in shooting craps and playing poker or other games of chance,[4] were either winning or losing money instead of merely engaging in the games themselves.[5] The existence of the "roll" or house money thus became an important element in the case because it was the source of funds to pay off successful gamblers and thus tended to prove that Kristich was indeed maintaining a place of gambling.[6]

Defense counsel voiced no objection to Officer Jansen's testimony regarding the admission by Kristich that a "roll" or house money existed and was in an apartment across the street. She did not raise the *Miranda* issue then or at any time during the trial, and in final argument, she referred to the possibility that the prosecuting attorney was going to tell the jury that Kristich said the money was across the street and she argued that what Kristich said was made in jest.

■ As a result, the record is completely silent as to whether the *Miranda* warning was given Kristich before he made the statement as to the existence of the house money, or even assuming that it was given, that Kristich waived his *Miranda* rights. In the absence of this issue being raised by the defense, we are aware of no requirement that the state lay a foundation as to the *Miranda* requirement before eliciting Jansen's statement regarding the house money. In these circumstances, since no objection was made and the *Miranda* issue was not raised in any way in the trial court, we consider it as having been waived by defense counsel, which waiver is binding upon Kristich,[7] and therefore, we decline to consider it on appeal.

*Discovery.*

Criminal Rule 16 provides for discovery prior to trial by both the accused and the prosecution.[8] Subdivision (b)(1)(ii) of that rule requires the prosecuting attorney to disclose to defense counsel

[a]ny written or recorded statements and summaries of statements and the substance of any oral statements made by the accused.

---

2. Although the statement was made at his own residence and before he was placed under arrest, he was not free to leave at any time after the police arrived. The *Miranda* decision requires warnings be given when a person is "deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966).

3. These are required by *Miranda*. 384 U.S. 436, at 444, 86 S.Ct. 1602, 16 L.Ed.2d 694, at 706–07 (1966); *Hammonds v. State*, 442 P.2d 39, 40 (Alaska 1968).

4. The police found on Kristich's premises dice and dice tables, a number of decks of playing cards, poker tables, poker chips, and other items that indicated games of chance were being played. In addition, a substantial amount of alcoholic beverages was found.

5. *Pin-Ball Machine v. State*, 371 P.2d 805, 808 (Alaska 1962).

6. $52.80 was found in the gambling area during the search of Kristich's residence.

7. *Lanier v. State*, 486 P.2d 981, 988 (Alaska 1971).

8. Crim.R. 16(a) provides:
   In order to provide adequate information for informed pleas, expedite trial, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process, discovery prior to trial should be as full and free as possible consistent with protection of persons, effective law enforcement, and the adversary system.

Counsel for Kristich states that she sought pre-trial discovery under Rule 16; that the prosecuting attorney gave her copies of the police report, the affidavit upon which the search warrant was based, and the search warrants; but that at no time did he reveal the substance of any oral statement made by Kristich or even the existence of such a statement. Counsel contends that the consequence of this violation of the Rule was to preclude her from challenging, prior to trial, the admission of Jansen's testimony regarding Kristich's oral statement as to the house money and that to allow the conviction to stand would be to emasculate the purpose of Criminal Rule 16 which is, in part, designed to minimize surprise, afford opportunity for effective cross-examination and meet the requirements of due process.

Defense counsel did not include this matter in her statement of points on appeal. In addition, as in the matter of the *Miranda* issue, defense counsel raised no objection to Jansen's testimony on any basis and in particular said nothing in the trial court as to the failure of the prosecuting attorney to disclose the substance of the oral statement alleged to have been made by Kristich. Had she objected at the time the statement came into evidence, the prosecuting attorney would have had the opportunity to explain, if he were able, his failure to comply with Criminal Rule 16.

■ In any event, we do not find any plain error which would impel us to reverse the conviction of Kristich. In view of the testimony pertaining to the frequent comings and goings in the early morning hours by numerous people at Kristich's residence, the sound of chips and the gambling paraphernalia found on the premises, including $52.85 on the kitchen bar area at which people were gathered and other gambling paraphernalia present, we believe there was ample evidence that Kristich was maintaining a gambling establishment. The prosecuting attorney's failure to produce his statement at the request of defense counsel did not appreciably affect the jury's verdict and therefore the error, if there was any, was harmless.[9]

■ If there were any indication that the prosecuting attorney had purposely avoided giving defense counsel the substance of the oral statement made by Kristich, we would not hesitate to remand this matter to the superior court to conduct a hearing to determine whether sanctions should be imposed against the prosecuting attorney under Criminal Rule 16(e)(2).[10] But in view of the failure of defense counsel to raise this issue in her statement of points on appeal, or to raise any objection at the trial, we are not inclined to adopt such a course of action in the instant case.

*Cautionary Instruction.*

■ Also with respect to Kristich's oral statement regarding the existence of the house money, the court failed to give a mandatory cautionary instruction that the oral admissions of a party ought to be viewed with caution.[11] Defense counsel did not request that this instruction be given, nor did she object to the failure of the court to give it. But in light of the mandatory language of Criminal Rule

9. This is the test for determining whether non-constitutional error is harmless, as set out in *Love v State*, 457 P.2d 622 (Alaska 1969).

10. Crim.R. 16(e)(2) provides:
Willful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court.
*See Des Jardins v. State*, Opn. No. 1245, March 8, 1976, 551 P.2d 181 (Alaska 1976).

11. At the time of the trial, Crim.R. 30(b)(2) provided:
. . . whether or not requested to do so, [the court] shall give the following basic instructions on all proper occasions:

(2) That the testimony of an accomplice ought to be viewed with distrust and the oral admissions of a party with caution.
The rule was revised by Supreme Court Order No. 222, effective December 15, 1975, to give more discretion to the trial judge in giving jury instructions.

30(b)(2), requiring that such an instruction be given whether or not the court is requested to do so, the failure to give the instruction is an error we must notice on appeal.[12]

█ What we have just said concerning the failure of the prosecuting attorney to make available to defense counsel the substance of the oral statement made by Kristich is dispositive of this point. We believe the failure to give the cautionary instruction did not appreciably affect the jury's verdict and was therefore harmless and not plain error.[13]

*The Complaint.*

Criminal Rule 3 provides that a criminal complaint shall be made upon oath in writing, and shall contain a statement of the essential facts constituting the offense charged.[14] Criminal Rule 4(a)(1) provides for the issuance of a warrant or summons

only if it appears from the complaint, or from an affidavit or affidavits filed with the complaint, that there is probable cause to believe that an offense had been committed and that the defendant has committed it.

Kristich argues that the district court's denial of his motion to dismiss the complaint was error because the affidavit contained in the complaint did not state facts sufficient to show the necessary probable cause.

When Officer Jansen and the other police officers entered the premises under the authority of the search warrant, they found, in addition to 18 persons present, evidence of gambling paraphernalia such as dice, dice cups, a dice table and stand, poker chips, a poker table and poker sign, chairs and stools, approximately $50 in cash, an assortment of alcoholic beverages and mixes, and several decks of cards. Either at that time or when Kristich and the others were taken to the police station and booked, they were all arrested on the charge of "attending an illegal business".

█ Kristich was not arrested in so many words for "maintaining a place of gambling", which is what AS 11.60.170 makes criminal and what he was charged with in the complaint. But maintaining a place where gambling is carried on is, in fact, an illegal business and Kristich was indeed "attending" such a business, either by being present if "attend" is used as an intransitive verb, or by being in charge of the business, if used as a transitive verb.[15] In any event, Kristich could not have been misled as to the basis for his arrest simply because the arresting officer did not use the words "maintaining a place of gambling". This is clear from the fact that Kristich was the occupant of the premises and from the presence there of tangible things that, as a matter of common sense, had all the earmarks of being implements of gambling.

█ Kristich, in fact, admits that the officers "might" have had probable cause to arrest him at that time without a warrant for maintaining a gambling place if the wording of the statute had been explicitly used. We believe that the officers did in fact have probable cause to make the arrest without a warrant at the time they entered the premises. What was found at that time, together with the prior knowledge of activities in the premises that appears from the detailed recital of facts in Officer Jansen's affidavit in support of the search warrant, would lead a reasonable person to believe that the offense of maintaining a gambling place was com-

12. *Anthony v. State,* 521 P.2d 486, 489–90 (Alaska 1974).

13. *Love v. State,* 457 P.2d 622 (Alaska 1969).

14. Crim.R. 3 provides in part:
(a) The complaint is a written statement of the essential facts constituting the offense charged. It shall be made upon oath before any judge or magistrate, except that complaints for traffic violations or for misdemeanors where the arrest has been made without the necessity of a warrant may be signed before any person authorized by law to administer oaths. . . .

15. The American Heritage Dictionary of the English Language, at 85 (1969, 1970).

mitted in the presence of the arresting officer.[16] A warrant for the arrest of Kristich was not required, and the arrest was valid.

■ Since the arrest was valid, it was not required that probable cause be shown on the face of the complaint as a prerequisite to issuance of the summons. As we stated in *Drahosh v. State,* 442 P.2d 44, 46 (Alaska 1968):

When a valid arrest is made without a warrant, the complaint serves only the function of a pleading. In such cases probable cause need not be shown on the complaint's face, but only the essential elements of the offense charged, so as to enable the defendant to adequately prepare his defense and to safeguard him against the possibility of being tried twice for the same acts or omissions. [footnote omitted]

We hold that the complaint was sufficient to inform Kristich of the crime with which he was charged. From what was stated in the complaint he could tell precisely what offense he was being called upon to defend. The court did not err in denying the motion to dismiss the complaint.

*Hearsay.*

■ Shortly after the police entered Kristich's premises, Officer Lacey approached a table where a Mr. Evans was seated. Lacey testified as follows:

As I approached the table, Mr. Evans looked up at me and smiled and said, "How come you guys raid me every time I have a winning hand", at which time he threw the cards face up on the table and threw his hands in the air.

This statement was admitted over the objection of defense counsel. Kristich argues that it was error to admit the statement because it was hearsay.

In *Watson v. State,* 387 P.2d 289, 293 (Alaska 1963), we stated:

Evidence of a statement made other than by a witness who was testifying is excluded as hearsay only when it is offered to establish the truth of the fact stated. Where it is offered without reference to its truth, but for some other relevant purpose, then the hearsay rule does not apply.[17]

Mr. Evans' statement to Officer Lacey was offered without reference to the truth of the matters asserted, *i. e.,* that a raid was taking place and that Evans had a winning hand. The statement was offered for the relevant purpose of showing that gambling was taking place on the premises that belonged to Kristich. There was no error in admitting the statement.

*The Search Warrant.*

■ A search warrant shall not be issued "but upon probable cause, supported by oath or affirmation".[18] Kristich contends that the affidavit in support of the search warrant issued was insufficient to show probable cause.

The affidavit, consisting of nine typewritten pages, was made by Officer Jansen, an investigator of the Anchorage Police Department. It contains the following salient facts:

(1) The premises, known as 421 E. 15th Avenue, Anchorage, were under a general police surveillance for a six-week period in January and February, 1973. During that time, Officer Jansen and two other police officers observed numerous persons entering and leaving the premises after 5 a. m. nearly every morning.

---

16. *Howes v. State,* 503 P.2d 1055, 1058–59 (Alaska 1972); *Miller v. State,* 462 P.2d 421, 425–26 (Alaska 1969); *Rubey v. City of Fairbanks,* 456 P.2d 470, 474 (Alaska 1969).

17. *See also Rubey v. City of Fairbanks,* 456 P.2d 470, 479–80 (Alaska 1969) (dissenting opinion of Justice Rabinowitz); *Tracey v. State,* 391 P.2d 732, 734 (Alaska 1964). *Cf. Avery v. State,* 514 P.2d 637, 644–45 (Alaska 1973).

18. United States Constitution, Fourth Amendment; Alaska Constitution, art. I, § 14.

(2) A more intensified surveillance began March 3 and continued until about March 23, 1973. During that time, Jansen and other officers observed the same degree of activity about the premises as they had observed in January and February, and on a number of occasions saw Kristich come out of the front door, go to the rear of the house and dump what appeared to be trash in a garbage can.

(3) During the March surveillance Jansen saw three specific persons, among others, enter and leave the premises. These three were known to Jansen as persons who, on a variety of occasions in the past, had been arrested for gambling and had either forfeited bail or entered pleas of guilty. On three separate occasions, the officers heard through a partially opened window the rattling of gambling chips "such as is made when they are thrown on a table".

(4) On five previous occasions Kristich had been arrested and had entered guilty pleas on the charge of maintaining an illegal business involving gambling and the illegal distribution of liquor at these same premises.

(5) The premises involved were rented by Kristich from Russel and Betty Arnet. The utilities, such as water, garbage, telephone and electricity were in the name of Kristich.

In support of his assertion that the affidavit of Jansen was insufficient to justify issuance of the search warrant, Kristich relies principally upon the United States Supreme Court decision in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). There the Court held, among other things, that the allegation in the affidavit that Spinelli was known as a gambler and an associate of gamblers, was "but a bald and unilluminating assertion of suspicion that is entitled to no weight in appraising the magistrate's

decision."[19] Here we have considerably more than the mere assertion that Kristich was known as a gambler and an associate of gamblers. In *Spinelli* the period of surveillance was for five days, whereas here it extended over a period of more than nine weeks. Also in *Spinelli*, the activity was innocent-seeming, whereas here there was a large number of comings and goings by known gamblers at Kristich's residence between 5 and 7 a. m. on an almost daily basis. In addition, Officer Jansen supported his assertion that Kristich was associating with known gamblers by reciting the latter's past convictions or forfeitures of bail for gambling offenses. Furthermore, there was not simply a bald assertion that Kristich was a "known gambler". The affidavit contained facts showing that on five previous occasions Kristich had been convicted of maintaining a gambling establishment, two of which involved the very same premises that was the subject of the search made in this case.

Finally, a later decision of the United States Supreme Court modified *Spinelli* in one important respect. In *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L. Ed.2d 723 (1971), the Court held that a police officer's knowledge of a suspect's reputation was a "practicable consideration of everyday life" upon which a magistrate may properly rely. The Supreme Court said:

> To the extent that *Spinelli* prohibits the use of such probative information, it has no support in our prior cases, logic, or experience and we decline to apply it to preclude a magistrate from relying on a law enforcement officer's knowledge of a suspect's reputation.[20]

The affidavit of Jansen was sufficient to show probable cause for the magistrate to issue a warrant to search the premises involved here. Probability, not proof, is the standard for probable cause.[21]

19. 393 U.S. at 414, 89 S.Ct. at 588, 21 L.Ed. 2d at 643.

20. 403 U.S. at 583, 91 S.Ct. at 2082, 29 L.Ed. 2d at 733.

21. *Davis v. State*, 499 P.2d 1025, 1028 (Alaska 1972), reversed on other grounds, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

The affidavit does not contain mere assertions of belief or suspicions that gambling was taking place. Examining it in a common-sense manner as a whole,[22] the affidavit contains reliable information in sufficient detail to warrant a reasonably prudent magistrate in believing that, in all probability, a criminal offense had been or was being committed.[23]

As an additional ground for attacking the sufficiency of the affidavit, Kristich states in his brief that much of the affidavit is hearsay without identification of the source or its trustworthiness. He does not, however, elaborate on the point. Appellate Rule 11(b)(1)[g] requires the argument in a brief to

> contain the contentions of the appellant with respect to the issues presented, and the reasons therefore, with citations to the authorities, statutes and parts of the record relied on. . . .

Since the issue as to hearsay is given no more than cursory treatment, and does not comply with the rule, we consider it as abandoned and as not meriting the attention of this court. *Fairview Development, Inc. v. City of Fairbanks,* 475 P.2d 35, 36 (Alaska 1970); *Lewis v. State,* 469 P.2d 689, n. 2 at 691–92 (Alaska 1970).

Kristich also contends that the warrant itself is defective because it fails to set out probable cause. He refers to Criminal Rule 37(a)(3)(ii), which states:

> (3) The warrant . . .
>
> (ii) shall state the ground or probable cause for its issuance and the names of the persons whose affidavits have been taken in support thereof.
> . . .

Kristich's interpretation of that rule is that "ground" and "probable cause" are synonymous and therefore, the requirement for

showing probable cause by affidavit for the issuance of the warrant applies as well to the warrant itself. This question was raised in *Hanby v. State,* 479 P.2d 486, 495–96 (Alaska 1970), but we found it unnecessary to decide it because in that case the warrant was invalid on other grounds.

The magistrate stated in the search warrant that Jansen had made an affidavit stating there was being concealed on Kristich's premises "[g]ambling paraphernalia, dice, chips, money and tables used in the playing of dice and card games, . . ." in possession of persons who intended to use the paraphernalia in violation of AS 11.60.170;[24] that he (the magistrate) was satisfied there was probable cause to believe that the property so described was concealed on the premises, "and that the foregoing grounds for application of the search warrant exist".

The search warrant complied with the requirements of the rule that the warrant "state the ground *or* probable cause for its issuance". [Emphasis added] The ground for the issuance of the warrant was a recitation of the reason for issuing it—that the magistrate was satisfied from Jansen's affidavit that probable cause, as required by the constitution, existed. There was no reason for reciting in the warrant the contents of the affidavit. This would have been unnecessarily repetitive because it appears from the warrant that the basis for its issuance was Jansen's affidavit, and the affidavit was part of the record of the case and available to the parties for inspection.[25]

The judgment of the conviction is affirmed.

AFFIRMED.

RABINOWITZ, J., not participating.

---

**22.** *Eliason v. State,* 511 P.2d 1066, 1070 (Alaska 1973).

**23.** *Harrelson v. State,* 516 P.2d 390, 396 (Alaska 1973). For an illuminating analysis of the sufficiency of affidavits in relation to the issuance of search warrants, see this court's opinion, authored by Chief Justice

Boochever, in *Keller v. State,* 543 P.2d 1211 (Alaska 1975).

**24.** Note 1, *supra.*

**25.** *United States v. Klapholz,* 17 F.R.D. 18, 24 (S.D.N.Y.1955).