**Vernon PRICE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 5083.**

Court of Appeals of Alaska.

July 9, 1982.

John Hagey, Asst. Public Defender, Fairbanks, and Brian Shortell, Public Defender, Anchorage, for appellant.

Mark I. Wood, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

* Seaborn J. Buckalew, Jr., Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

1. Former AS 11.20.080, repealed in 1980, provided:

> A person who breaks and enters a dwelling house with intent to commit a crime in it, or having entered with that intent, breaks a dwelling house or is armed with a dangerous weapon in it, or assaults a person lawfully in it is guilty of burglary, and upon conviction is

Before BRYNER, C.J., SINGLETON, J., and BUCKALEW, Superior Court Judge.*

OPINION

SINGLETON, Judge.

Vernon Price contends that his conviction of two counts of burglary should be reversed because of the trial court's failure to give a mandatory instruction relating to accomplice testimony. We find that the court's failure to give the instruction rendered Price's trial fundamentally unfair and constitutes a miscarriage of justice, and thus, we reverse the conviction and remand the case for further proceedings.

On October 13, 1972, Vernon Jones, Phillip Smilie, and Vernon Price were indicted on two counts of burglary in a dwelling in violation of former AS 11.20.080.[1] Although the state dismissed charges against Smilie and accepted a reduced plea of guilty of receiving and concealing stolen property from Jones, the state pursued the charges against Price and on January 26, 1973, he was found guilty on both counts of burglary. On February 5, 1973, Price was sentenced to serve ten years on each count of burglary; both sentences were to be served consecutively. Notice of appeal was filed by Price's privately retained counsel on February 5, 1973, but was dismissed on June 20, 1973, for failure to pay transcript costs. On February 10, 1976, defendant Price, through the Fairbanks Public Defender Agency, filed a motion to reinstate the appeal; the motion was denied without prejudice on June 3, 1976. A second motion to reinstate the appeal was filed on December 13, 1976; on January 27, 1977, the motion to reinstate the appeal on the merits

> punishable by imprisonment in the penitentiary for not less than one year nor more than 10 years. However, if the burglary is committed at nighttime, it is punishable by imprisonment for not less than one year nor more than 15 years. If a human being is within the dwelling at the time of the burglary during the nighttime or daytime, it is punishable by imprisonment for not less than one year nor more than 20 years.

was denied.[2] On November 6, 1979, Price applied for post conviction relief pursuant to Criminal Rule 35(b)(1); the superior court denied this motion on December 3, 1979. Price now appeals to this court.

■ Former Criminal Rule 35(b)(1)[3] allowed any person to apply for relief if his or her conviction was "in violation of the constitution of the United States or the constitution or laws of Alaska...." Price argues that the trial court violated then existing state law as provided in former Criminal Rule 30(b)(2)[4] when it failed to instruct the jury that the testimony of accomplices should be viewed with distrust.[5]

**2.** Justice Rabinowitz and Justice Dimond, *pro tem*, dissented from the denial of the motion to reinstate the substantive appeals.

There is nothing in the record that suggests that Price agreed to dismiss his appeal or caused or added to his counsel's apparent neglect.

**3.** Former Criminal Rule 35(b)(1) provided:

Any person who has been convicted of, or sentenced for, a crime and who claims:

(1) that the conviction or sentence was in violation of the constitution of the United States or the constitution or laws of Alaska may institute a proceeding under this rule to secure relief.

The language of this rule is now embodied in Criminal Rule 35(c)(1).

**4.** Former Criminal Rule 30(b)(2) provided:

*Instructions to Be Given.* Except as otherwise provided by statute or by these rules, the court shall instruct the jury that they are the exclusive judges of all questions of fact and of the effect and value of evidence presented in the action. The court shall instruct the jury on all matters of law which it considers necessary for the jury's information in giving their verdict, and whether or not requested to do so, shall give the following basic instructions on all proper occasions:
. . . .
(2) That the testimony of an accomplice ought to be viewed with distrust and the oral admissions of a party with caution.

This rule follows an earlier Alaskan statute, ACLA 1949 § 58–5–1 (Fourth), which was based upon Oregon Law.

The act providing a civil government for Alaska, 23 Stat. 26 (1887) adopted the then current laws of Oregon. The Oregon Code of 1862 included a mandatory jury instruction which provided that the testimony of an accomplice be viewed with distrust. Ann. Laws of Oregon, § 845 (Hill 1887), former Criminal Rule 30(b)(2) was revised by the Alaska Supreme Court, Order No. 222, effective December 15, 1975, to give the trial judge more discretion in his choice of jury instructions. *Kristich v. State*, 550 P.2d 796, 800 n.11 (Alaska 1976). Nevertheless, we do not consider that decision dispositive on the question of the instruction's propriety.

California had statutory authority for a mandatory jury instruction regarding accomplice testimony set forth in § 2061 of its Code of Civil Procedure until the California legislature repealed the section effective January 1, 1967. The Law Review Commission comment to § 2061 states:

The instructions listed were derived from the common law. *See, e.g., People v. Coffey*, 161 Cal. 433, 119 Pac. 901 (1911). Hence, the courts have not relied on Section 2061 as a definitive list of the cautionary instructions that may or must be given on appropriate occasions. *See, e.g., People v. Putnam*, 20 Cal.2d 885, 129 P.2d 367 (1942). Section 2061, therefore, is repealed to avoid singling out only a few of the cautionary instructions that are given by the courts. As the section is but a partial codification of the common law, the repeal should have no effect on the giving of the instructions contained in the section or on the giving of any other cautionary instructions that are permitted or required to be given by decisional law.

Cal.Code of Civ.Pro. § 2061, supp. at 137. The courts of California have continued to find the instruction mandatory, concluding that its repeal does not effect "decisional" law. *See People v. Gordon*, 10 Cal.3d 460, 516 P.2d 298, 304 (Cal.1973); *People v. Terry*, 2 Cal.3d 362, 85 Cal.Rptr. 409, 466 P.2d 961, 984 (1970), *cert. dismissed*, 406 U.S. 912, 92 S.Ct. 1619, 32 L.Ed.2d 112 (1972); 2 Cal.Jury Instructions, Criminal, 4th Ed. at 309–10. We recognize that here the decision to eliminate the "mandatory" nature of the instruction was made by our supreme court, not by the legislature.

**5.** Defense counsel preserved this issue for appeal during the following exchange:

Mr. Martin: I have a serious question as to whether or not there should be some instruction with regard to accomplices.
The Court: I gave the instruction on aiding and abetting. Again I . . .
Mr. Martin: Well I'm talking—talking specifically about testimony of accomplices.
The Court: Well the testimony of accomplices—well, I think that's already covered. The jury is instructed—well, for one thing none was requested but even—even had one been requested, this is not the situation of an informer and I think the instructions do cover—the jury is instructed to consider the interest in the case, bias, prejudice, passion, any feelings that—that they might have for or against the party—I think it's properly

The Alaska Supreme Court promulgates the Criminal Rules pursuant to its authority under article IV, section 15 of the Alaska Constitution,[6] and by statute. The Criminal Rules have the force and effect of law and take precedence over the Code of Criminal Procedure.[7] We thus consider the Criminal Rules as part of the general "laws" of Alaska as the term is used in Criminal Rule 35(b)(1).[8]

■ Former Criminal Rule 30(b)(2), in effect at the time of Price's trial, required the trial court to instruct the jury that the testimony of an accomplice is to be viewed with distrust.[9] This rule reflected the long

covered. I'm not exactly sure of which instruction you're alluding to but I think I know and you have an instruct—you have an exception. The record will reflect if it didn't get picked up, that it was requested orally prior to the instructions.

6. Article IV, section 15 of the Alaska Constitution provides:

*Rule-Making Power.* The Supreme Court shall make and promulgate rules governing the administration of all courts. It shall make and promulgate rules governing practice and procedure in civil and criminal cases in all courts. These rules may be changed by the legislature by two-thirds of the members elected to each house.

7. AS 12.85.010 provides:

*Applicability of title and supreme court rules.* The provisions of this title apply to all criminal actions and proceedings in all courts except where specific provision is otherwise made or where the Rules of Criminal Procedure adopted by the supreme court under its constitutional authority apply. This title governs all proceedings in actions brought after January 1, 1963, and all further proceedings in actions then pending, except to the extent that, in the opinion of the court, their application in a particular action pending when the rules take effect would not be feasible, or would work injustice, in which event, the laws in effect before January 1, 1963, apply.

8. The state argues that an error must be of constitutional magnitude in order to be attacked under Criminal Rule 35(b)(1). We find that such an interpretation is improperly restrictive and ignores the clear language of the rule. Criminal Rule 35(b)(1) was originally based on 28 U.S.C.A. § 2255 which provides, in part,

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence . . . ."

See *Perry v. State*, 429 P.2d 249, 252 n.8 (Alaska 1967); *Nichols v. State*, 425 P.2d 247, 253–54 (Alaska 1967).

To obtain relief, a § 2255 petitioner must show "exceptional circumstances" which result in a complete miscarriage of justice, or which are inconsistent with the rudimentary demands of fair procedure. *See Grimes v. United States*, 607 F.2d 6, 10–11 (2nd Cir. 1979); *Marshall v. United States*, 576 F.2d 160, 162 (9th Cir. 1978) (non-constitutional issues are proper for collateral attack only when some type of extraordinary discrepancy is alleged); *Lorraine v. United States*, 444 F.2d 1, 2 (10th Cir. 1971). An extended line of federal cases holds that collateral relief is not available to set aside a conviction on the basis of erroneous or improper jury instructions unless the error has the effect of rendering the trial fundamentally unfair. *See United States v. Kelton*, 518 F.2d 531 (8th Cir. 1975) *cert. denied*, 423 U.S. 1021, 96 S.Ct. 460, 46 L.Ed.2d 394 (1975); *Margoles v. United States*, 407 F.2d 727 (7th Cir. 1969) *cert. denied*, 396 U.S. 833, 90 S.Ct. 89, 24 L.Ed.2d 84 (1969); *Feeney v. United States*, 392 F.2d 541 (1st Cir. 1968); *Glouser v. United States*, 296 F.2d 853 (8th Cir. 1961), *cert. denied*, 369 U.S. 825, 82 S.Ct. 840, 7 L.Ed.2d 789 (1962); *Cambiano v. United States*, 295 F.2d 13 (9th Cir. 1961), *cert. denied*, 368 U.S. 999, 7 L.Ed.2d 537 (1962); *United States v. Tivis*, 302 F.Supp. 581 (N.D.Tex.1969), *aff'd*, 421 F.2d 147 (5th Cir. 1970); *Rochester v. United States*, 291 F.Supp. 323, 327 (M.D.Ala.1968).

Criminal Rule 35(b) was substantially amended, effective September 1968, to adopt the Revised Uniform Post-Conviction Procedure Act (1966), in place of 28 U.S.C. § 2255. *See Merrill v. State*, 457 P.2d 231, 237–38 (Alaska 1969), *modified on other grounds, Donnelly v. State*, 516 P.2d 396 (Alaska 1973). We have considered the cases decided under the latter act, and find them generally consistent with the federal authorities cited here regarding the scope of post-conviction relief. *See also*, Post-Conviction Procedure Act § 1, 11 U.L.A. 491–511 (1974). Thus we conclude that errors in jury instructions which render a criminal trial fundamentally unfair warrant relief under Criminal Rule 35(c) and former Criminal Rule 35(b).

9. The text of former Criminal Rule 30(b)(2) is provided in note 4, *supra.*

established common law view of accomplice testimony. *Galauska v. State*, 527 P.2d 459, 470–71 (Alaska 1974) (Boochever, J., dissenting), *modified on other grounds, Galauska v. State*, 532 P.2d 1017 (Alaska 1975). The inherent character of accomplice testimony necessitates that the jury view such testimony with special consideration:

> Experience has shown that the evidence of an accomplice should be viewed with care, caution and suspicion because it comes from a tainted source and is often given in the hope or expectation of leniency or immunity. (citations omitted) In addition to being derived from a suspect source, accomplice testimony is frequently cloaked with a plausibility which may interfere with the jury's ability to evaluate its credibility. An accomplice is not merely a witness with a possible motive to tell lies about an innocent accused but is such a witness peculiarly equipped, by reason of his inside knowledge of the crime, to convince the unwary that his lies are the truth.

*State v. Beene*, 257 N.W.2d 589, 590 (S.D. 1977), *quoting People v. Tewksbury*, 15 Cal.3d 953, 127 Cal.Rptr. 135, 544 P.2d 1335, 1345–46 (Cal.1976), *cert. denied*, 429 U.S. 805, 97 S.Ct. 38, 50 L.Ed.2d 65 (1976).

Recognizing that such testimony frequently has an aura of truth about it that may be due to the witness' involvement and not the accused's, courts have required the instruction to insure the jury is aware of this danger. Cross-examination may not be successful where an "accomplice" witness has enough facts to fabricate another's involvement. Argument by counsel is also not sufficient to make up for the failure to give an instruction since:

> The giving of the instruction to view the testimony of an accomplice with distrust clothes the issue with the cloak of the judge's impartial authority and thus mandates application of that criterion in the jury's deliberation. For this reason alone, the failure to give the accomplice

instruction cannot be regarded as harmless under the circumstances of this case. *Anthony v. State*, 521 P.2d 486, 491 (Alaska 1974). Furthermore, the supreme court has noted:

> The purpose of the rule is to emphasize the very suspect motivations of this class of witness. Such witnesses oftentimes are cooperating with the prosecution to obtain some special advantage for themselves, and they may be willing to distort the truth or to lay the entire blame on the defendant in hopes of avoiding further criminal liability or imprisonment. The instruction serves to inform the jury of this background of 'intrigue, contrivance, distrust and prejudice to afford fundamental fairness to the parties consistent with due process of law.'

*Gordon v. State*, 533 P.2d 25, 29 (Alaska 1975) (*quoting Anthony* at 491). *See also State v. Wood*, 252 Or. 58, 448 P.2d 509, 510 (1968).

In several cases, the Alaska Supreme Court has recognized that failure to give what at that time were mandatory instructions constitutes error, but has then gone on to consider the entire record to determine whether such error requires reversal of the judgment of conviction. *Stork v. State*, 559 P.2d 99 (Alaska 1977); *Kristich v. State*, 550 P.2d 796 (Alaska 1976); *Anthony v. State*, 521 P.2d 486 (Alaska 1974); *Bakken v. State*, 489 P.2d 120 (Alaska 1971).[10] The supreme court has centered its analysis on the importance of the accomplice's testimony to the government's case and its impact on the jury verdict. 559 P.2d at 102.

The state asserts that, in this case, the trial judge's failure to give the instruction was harmless error. In order to conclude that the error is harmless, this court "must be able to fairly say that the omission of the cautionary instruction did not appreciably affect the jury's verdict . . . ." *Bakken*, 489 P.2d at 125 n.13, *citing Love v. State*, 457 P.2d 622, 629–32 (Alaska 1969).

**10.** In the case presently before this court a proper objection was made and the instruction was mandatory under Criminal Rule 30(b)(2), thus the plain error standard is not applicable. *See Anthony v. State*, 521 P.2d at 490 n.7 (Alaska 1974).

In *Stork v. State*, 559 P.2d 99 (Alaska 1977), the defendant appealed his manslaughter conviction for the death of his wife, claiming that the trial court failed to instruct the jury that his admission should be viewed with caution as required by former Criminal Rule 30(b)(2). The supreme court ruled that Stork's three conflicting versions of the shooting were a substantial factor leading to his conviction, and noted that the state repeatedly emphasized this testimony. 559 P.2d at 103. The state presented evidence suggesting that the defendant and his wife argued immediately before the shooting, that there was a history of marital discord between the two, that the defendant had a violent nature, and that he had broken his wife's nose only a week prior to the shooting. In addition, there was expert testimony concerning the condition of the gun and its distance from the victim when fired that contradicted Stork's testimony as to how the shooting occurred. 559 P.2d at 100. In spite of the substantial evidence in support of the state's arguments, the court concluded that it could not fairly say that the omission of the mandatory instruction did not appreciably affect the jury's verdict and it held that the omission constituted prejudicial error.

In *Kristich v. State*, 550 P.2d 796 (Alaska 1976), the defendant stated to the police that house money for a gambling operation was across the street. On appeal, Kristich argued that the trial court failed to instruct that the oral admissions of a party ought to be viewed with caution. The supreme court found substantial evidence supporting the conclusion that Kristich was maintaining a gambling establishment even without the defendant's admission. The court noted independent testimony as to the number of people arriving and leaving the residence, their hours of arrival and departure, the sound of chips and the presence of gambling paraphernalia and money at a place within the residence where people were gathered. 550 P.2d at 800. The court held that failure to give the cautionary instruction did not appreciably affect the jury's verdict and was therefore harmless rather than plain error.

The defendant in *Bakken v. State*, 489 P.2d 120 (Alaska 1971), was indicted for statutory rape. At trial, one witness testified to an alleged admission by the defendant; Bakken denied making the statement. 489 P.2d at 122–123. In addition, the victim testified against Bakken, and other witnesses testified that Bakken was present at the party during the alleged rape. The supreme court believed the witness' testimony "assumed a crucial role in the conviction of Bakken," 489 P.2d at 123, and held that the lower court's failure to give the cautionary instruction was prejudicial "given the closeness of the case and the importance of [the witness'] testimony concerning Bakken's purported admission . . . ." 489 P.2d at 125.

In the case at hand, the state centered its argument on the testimony of its two key witnesses, Phillip Smilie and Vernon Jones. On August 1, 1972, Smilie and Jones were released to Price through a work release program from the Fairbanks Correctional Center. Smilie and Jones testified that instead of working on the home repair project for which they had been released, they accompanied Price and a fourth person and burglarized two homes. Both Smilie and Jones testified that Price had been with them the entire day (from approximately 9:00 a.m. to 8:00 p. m.).

At trial, the state offered the testimony of several witnesses in an attempt to corroborate Smilie's and Jones' testimony.[11] The state now argues that it put forth sufficient corroborating evidence so that

11. We note that the jury was not instructed in conformity with AS 12.45.020 that a conviction could not be had on the uncorroborated testimony of an accomplice. AS 12.45.020 provides:

*Conviction on testimony of accomplice and corroboration.* A conviction shall not be had on the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the crime; and the corroboration is not sufficient if it merely shows the commission of the crime or the circumstances of the commission.

the error, if any, was harmless under the test enunciated in *Love v. State*, 457 P.2d 622 (Alaska 1969). The most important corroborating testimony was that of Richard and Mora Seifert. Mr. Seifert testified that he saw a blue and white Chevrolet between 6:00 p.m. and 6:30 p.m. in the area where the burglaries occurred and told Mrs. Seifert to note the license number.[12] Mr. Seifert further testified that as he and his wife drove by the blue and white car, he saw two men standing in the woods.[13] In court, both Mr. and Mrs. Seifert identified Price as the driver of the car they passed.[14] The Seiferts' identifications of Price, however, are not the overwhelming proof that the state argues it is. Richard Seifert did not identify Price in a lineup at the beginning of the trial; the identification came later in the trial when Price was seated at the defense table. In light of these discrepancies, we believe that the testimony of Smilie and Jones was crucial to the state's case.[15]

Contrary to the state's contention that it offered substantial direct corroboration of Smilie's and Jones' testimony as it related to Price's involvement, the record indicates that the state's other witnesses merely corroborated extraneous details of their testimony and did not implicate Price in the crimes.[16] *See* AS 12.45.020.

At his trial Price presented an alibi defense, claiming that he had loaned his car to Smilie and Jones on the day in question while he had been doing mechanical work at a garage. Price's friend, Al Larrabee, testified that at approximately 8:00–8:30 a.m. he followed Price in his own car so that Price could lend his car to men at a work site. Larrabee drove Price back to the garage at approximately 9:00 a.m.[17] Thomas Smith, the proprietor of the garage, testified that Price picked up the garage key that morning between 8:30 and 9:00 a.m. Larry Thompson, a customer, testified to seeing Price at the garage between 2:00 and 2:30 p.m. on that day, and George Gifford, a customer-acquaintance, testified to seeing Price at 6:00 p.m. Mary Duncan, an acquaintance, testified that she had seen Price that day between 1:00 and 3:00 p.m. in a store behind the garage.

The state's case rested almost entirely upon the testimony of Smilie and Jones. The trial court's failure to instruct that the testimony of accomplices ought to be viewed with distrust was clearly prejudicial error. In addition, our concern for guarding against the danger of eroding the right of a criminal defendant to have his timely request for a mandatory instruction honored leads us to conclude that Price's arguments are persuasive. *See, State v. Wood,*

---

12. An investigator for the Alaska State Troopers checked the license number noted by Mrs. Seifert and discovered that the vehicle was licensed to Price.

13. Mrs. Seifert testified to seeing only one man.

14. On cross-examination, both Smilie and Jones testified that another man, Dean Burgess, was driving the car at this time. Consequently, the Seiferts do not corroborate the testimony of the accomplices in this respect.

15. Price emphasizes the importance of Smilie's and Jones' testimony to the state's case, noting that the state refers to the testimony of witnesses 36 times to describe the facts of the case and that 23 of these references are to the testimony of either Smilie or Jones.

16. Gordon Scott, who lived near one of the burglarized homes, observed a blue and white Chevy with four or five people in it between 2:30 and 3:00 p.m. During the court proceedings, he identified two people as the men who were in the car, but neither person was Price.

Another neighbor testified similarly. Richard Reynolds testified that he had seen Vernon Jones at the Speed Queen Laundromat between 6:00 and 8:00 p.m. which corroborated Jones' testimony that he had gone there after the second burglary. Jones also testified that he had seen Reynolds in the Speed Queen at that time. Jerry Crow corroborated the testimony of Smilie and Jones, stating that Jones had dropped off a stereo at Crow's place on the day in question. James Hooper, record custodian of the Fairbanks Correctional Center, offered records to verify that Smilie and Jones returned to the facility at about 8:15 p.m.

17. Price does not dispute that his car was used to commit the burglaries. The state offered the testimony of several witnesses in addition to that of the Seiferts who claimed that a blue and white Chevrolet was in the vicinity of the burglaries. None of these witnesses, however, identified Price as one of the passengers in the car.

448 P.2d at 510 (Goodwin, J., dissenting). The judgment of conviction is REVERSED and this case is REMANDED to the trial court for a new trial.

COATS, J., not participating.