**Dominic J. SALVATO, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–2979.**

Court of Appeals of Alaska.

July 12, 1991.

Mary P. Treiber, Assistant Public Defender, Ketchikan, and John B. Salemi, Public Defender, Anchorage, for appellant.

Valerie A. VanBrocklin, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

OPINION

Before BRYNER, C.J., COATS, J., and ANDREWS, Superior Court Judge.[*]

ANDREWS, Judge.

On January 22, 1988, a jury convicted Dominic J. Salvato of one count of theft in

---

**4.** Our disposition of this issue makes it unnecessary for us to address the other issues raised by Bibbs.

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

the second degree. Superior Court Judge Thomas E. Schulz sentenced Salvato to three years' imprisonment, with all but six months suspended, and ordered him to pay restitution in the amount of $22,500. Salvato appeals, claiming Judge Schulz erred by not requiring the jury to return a mandatory special verdict as required by Criminal Rule 31(e)(1). He also argues that the restitution award is excessive. We affirm.

In June of 1986, Salvato began forming a corporation, Seaskin Limited, for the purpose of tanning fish skins, which would be used in making products such as boots and wallets. At the first meeting of the corporation in mid-August of 1986, Salvato and his attorney were the only participants. Salvato, acting as president, authorized the corporation to pay him an annual salary of $25,000. Salvato also authorized himself the payment of 26,000 shares of stock in the corporation in consideration of the work he had already put into forming it.

Salvato then persuaded several investors to invest in the corporation to the amount of $63,418.42. At the October meeting of the corporation, a board of directors was elected, composed of people who had invested money in the corporation. Among the business items discussed at that meeting was whether Salvato should be paid a salary. The board elected to table that issue until its December meeting. Salvato then requested that the corporation pay him a *per diem* for his work. This idea was also tabled until the December meeting. The December meeting was postponed because Salvato was not able to attend.

During the next few months, members of the board became suspicious that Salvato was misappropriating corporate funds. The total amount of money invested by members of the Board was $63,918.42, yet, as of the beginning of January, there was only $7,711.82 in the corporate account, and the only business equipment purchased was one fish-skinning machine which cost $7,500. At the February board meeting, board members confronted Salvato and asked for an accounting of the money he had spent so far. The board members sug-

gested he reimburse the corporation by turning over his shares of stock. When Salvato failed to comply with the board's request, members contacted the state troopers. The grand jury indicted Salvato for theft in the first degree on April 17, 1987.

The case went to trial in January of 1988. The jury received instructions for both first-degree and second-degree theft. The second-degree instruction read:

Alaska Statutes section 11.46.130 provides in relevant part: A person commits the crime of theft in the second degree if the person commits theft as defined in AS 11.46.100 and the value of the property or services is $500.00 or more but less than $25,000.00.

During deliberations the jury asked the judge if it could add a dollar amount along with the verdict. The state's attorney said that he did not have any problem with that proposal. Salvato's attorney replied:

Your honor, I don't have any problem, and I've discussed the question with my client, I've advised him that they want to know if they can put a dollar amount with the verdict, I've told him that I don't see any problem with it, he agrees. I would like to put on record, though, that we're certainly not being held, I mean, I would assume that the Court is not assuming that it is held, bound by whatever dollar amount they reach as far as restitution or aggravation or whatever in sentencing Mr. Salvato.

Judge Schulz told the jury they could add a dollar amount. However, the jury had already finished deliberations on the first-degree theft count at the time it had asked the question about a dollar amount. Judge Schulz asked the parties if they objected to taking the verdict before the jury resumed deliberations on the lesser counts. Both sides agreed. The jury returned a not guilty verdict on the first-degree count and then continued deliberations on the second-degree count. The jury returned a guilty verdict on second-degree theft which did not include a dollar amount. The court asked if either party wanted the jury polled; both sides declined. Salvato did not

request that a dollar amount be fixed at the time the verdict was returned.

 A week later, Salvato moved for a new trial or for acquittal based on Criminal Rule 31(e)(1), which states:

(e) **Special Verdicts.**

(1) *Offenses Against Property.* When an indictment charges a theft or theft-related offense against property, on conviction of the defendant the jury shall ascertain and declare in the verdict the value of the property that was the subject of the crime.

Salvato argued that Rule 31(e)(1) required the jury to make special findings in property related offenses, which had not been done in his case. Judge Schulz denied the motion, finding that defense counsel failed to raise the issue at trial, and that when the jury *sua sponte* requested to include an amount in the verdict, defense counsel argued that although he would not object to the inclusion of an amount by the jury, he would not be bound by it for any purpose.

Criminal Rule 31(e)(1) seems to be a relatively obscure rule not commonly used in practice. In that regard, the trial judge stated:

The court was not familiar with, or at least didn't remember, the requirement of Rule 31 that—assuming it applies to this case—that requires the special interrogatory to the jury in theft cases. I don't know how many theft cases I've tried, but I don't remember that we ever submitted that to a jury. You know, the special interrogatory. There haven't been that many of them go to trial in Ketchikan, but out of all of them nobody has ever asked for that, and I just—I frankly didn't remember.

In his motion for a new trial, defense counsel submitted an affidavit stating that he too was unaware of the requirements of Criminal Rule 31(e). Even though a well-experienced trial judge and seasoned trial attorney were unfamiliar with this dormant

rule, the rule exists and its language is mandatory.[1] *Fowler v. Anchorage*, 583 P.2d 817, 820 (Alaska 1978) (use of word "shall" denotes a mandatory intent).

Assuming that error was committed by not requiring the use of the special verdict in this case, Salvato is still required to show plain error because he failed to object below. *McBride v. State*, 368 P.2d 925, 928 (Alaska 1962); *see also Price v. State*, 647 P.2d 611, 615 n. 10 (Alaska App.1982) (plain error standard applicable when a party fails to object to the court's failure to give mandatory instruction under Criminal Rule 30(b)(2)). Under the plain error standard of review, this court must decide if the error in failing to require a special verdict was obviously prejudicial and affected Salvato's fundamental rights. *Hammonds v. State*, 442 P.2d 39, 43 (Alaska 1968); *Bowker v. State*, 373 P.2d 500, 505 (Alaska 1962).

In the present case, it was unnecessary for the jury to ascertain the exact value of property taken by Salvato in order to convict him. The jury was properly instructed that to convict Salvato of second-degree theft they had to find that the value of the property stolen was somewhere in the range of $500 to $25,000. Salvato cites no authority for the proposition that each juror must agree to the same amount in order for a theft conviction to be unanimous. Accordingly, Salvato was not prejudiced by the fact that the jurors may not all have agreed on the same value of property stolen.

Additionally, Salvato specifically stated that he did not want the court to be bound by any decision the jury made regarding the value of the theft. When the jury returned its verdict without stating the value of the property, Salvato did not object. Salvato appears to have made a tactical decision to forego input from the jury in deciding the amount of the theft. An appellate court will rarely find plain error if defense counsel may have had a strategic

---

1. We recommend that the standing Committee on Criminal Rules review this rule to determine whether, in light of the revised criminal code and our decisions affecting restitution, the rule should be amended, deleted, or clarified. *See Harris v. State*, 678 P.2d 397, 408 (Alaska App. 1984), and *Fee v. State*, 656 P.2d 1202, 1205 (Alaska App.1982).

reason for not objecting. *Clemans v. State*, 680 P.2d 1179, 1186 (Alaska App. 1984).

Furthermore, there is authority that the trial court is not bound by jury verdicts in determining restitution awards. In *Harris v. State*, 678 P.2d 397, 408 (Alaska App. 1984), this court said that "the trial court was free to determine the actual loss resulting from that crime, independent of the jury verdict, so long as the trial court's award was based upon substantial evidence." *See also Fee v. State*, 656 P.2d 1202, 1205 (Alaska App.1982) (upholding a restitution award in excess of the jurisdictional limit of the statute).

All things considered, Salvato does not appear to have been substantially prejudiced by the failure to receive a special verdict. Even with a special verdict, Salvato still would have been convicted and, assuming the jury returned an amount less than the $22,500 ordered by the court, case law indicates that Judge Schulz was not bound to follow the jury's guidance in ordering restitution. As a result, we conclude that Judge Schulz did not abuse his discretion by refusing to grant a new trial or judgment of acquittal.

■ Salvato also argues that the court erred in setting the restitution award at $22,500. The amount of money originally deposited into the Seaskins corporate bank account was $61,203.42.[2] At the time the corporation took Salvato off as signatory to the account, only $7,711.82 remained. Salvato provided receipts accounting for money that he spent, much of which appeared to be for personal expenses unrelated to running the business. Salvato was unable to account at all for $34,989.35.

In fashioning the restitution award, Judge Schulz started from the figure of $35,000 (rounding up $34,989.35), giving Salvato the benefit of the doubt about the expenses for which he provided receipts. He subtracted $12,500 from that figure as six-months' salary, which he determined Salvato may have believed he was entitled to, even though the board had never actual-

ly authorized paying him a salary. Subtracting the $12,500 from $35,000, Judge Schulz calculated the restitution amount at $22,500. Judge Schulz ordered repayment to be made in the amount of $375 per month, beginning sixty days after he completed his incarceration, or to transfer his remaining shares of stock in the corporation to the remaining shareholders.

Salvato does not argue that Judge Schulz imposed an excessive period of incarceration, only that the restitution amount was excessive. The amount of restitution, which is part of the sentencing determination, shall be affirmed unless clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974). Salvato argues that the jury determination under Criminal Rule 31(e) is meant to guide the court in setting restitution and is necessary in this case for a proper determination. He also argues without any supporting authority that the court is limited to a restitution award of $500, the lower limit of second-degree theft, because it failed to require the special verdict.

Our decisions in *Harris* and *Fee* dispose of Salvato's claim. The trial court is not bound by the jury verdict on the question of the amount of restitution, regardless of whether it includes a Criminal Rule 31(e) finding.

Judge Schulz' restitution award is supported by substantial evidence. *Id.* Judge Schulz stated in his findings that he thought the evidence may have supported a conviction for first-degree theft, yet he chose to bind himself to the jury's verdict. He gave Salvato the benefit of the doubt in several ways: he subtracted $12,500 as salary, even when the board had not authorized a salary; he deducted any receipts that Salvato was able to produce, even though the expenses were obviously personal and not business related; and he allowed Salvato to pay the restitution in the form of stock, which is the original arrangement that Salvato had worked out with the board of directors before they pressed criminal charges. Judge Schulz

2. Salvato did not deposit all the money original- ly collected from the investors.

did not abuse his discretion in fashioning the restitution award.

We conclude that Judge Schulz did not commit plain error by failing to require the jury to deliver a special verdict, and that the restitution award of $22,500 was not excessive. The decision of the trial court is AFFIRMED.

MANNHEIMER, J., not participating.